JUDGE KOELTL    07 CV    6838

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

GREGG FREISHTAT, as )
Shareholders' Representative, )
)
    Plaintiff, )
)
v. )    Civil Case No. _____
)
LIVEPERSON, INC., )
)
    Defendant. )
_____ )

JUL 3 0 2007

U.S.D.C. S.D. N.Y.

CASHIERS

## COMPLAINT FOR DECLARATORY JUDGMENT,
## INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, GREGG FREISHTAT ("Freishtat" or "Shareholders'

Representative"), as agent and attorney-in-fact for the shareholders of Proficient

Systems, Inc. ("Proficient" or "Company"), by his undersigned counsel, brings this

Complaint for declaratory judgment, injunctive relief, and damages against the

defendant, LIVEPERSON, INC. ("LivePerson" or "Parent"), and states as

follows:[1]

### THE PARTIES

1.    Mr. Freishtat is a citizen of the State of Georgia.

---

[1] Capitalized terms not otherwise defined in this Complaint shall have the meaning
ascribed to such terms in the Merger Agreement (defined below).

2.    LivePerson is a publicly-traded Delaware corporation (NASDAQ Symbol: LPSN) with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the parties and the claims raised in this lawsuit pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship among the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.    Venue is proper in this Court, as is stated in Section 11.05 of the Merger Agreement (defined below) giving rise to the causes of action asserted herein.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### The Merger Agreement

5.    LivePerson is a provider of online conversation solutions. Its hosted software enables companies to identify and proactively engage online visitors to increase sales, satisfaction and loyalty while reducing service costs.

6.    Proficient was an Atlanta-based provider of hosted proactive chat solutions that help companies generate revenue on their websites. The Proficient solution utilizes sophisticated data mining algorithms to track and analyze the behavior of web site visitors in real time, and then intelligently approaches visitors with the appropriate sales or service professional based on the company's specific

business objectives. This real-time data mining engine determines the most valuable customers and engages them with chat and collaboration technologies, allowing companies to experience increased revenue, improved productivity and enhanced customer satisfaction.

7.     On or about June 22, 2006, LivePerson, SOHO Acquisition Corp. ("Merger Sub"), Proficient and Freishtat, as agent and attorney-in fact for each shareholder of the Company, entered into an Agreement and Plan of Merger (the "Merger Agreement"). A true and correct copy of the Merger Agreement, together with Annex I, Annex II, and Annex III, which are hereby incorporated by reference, is attached as Exhibit "A."[2]

8.     Pursuant to the Merger Agreement, LivePerson acquired all of the outstanding capital stock of Proficient in exchange for, among other things, 2 million shares of LivePerson common stock to be paid at closing, consisting of the Initial Merger Consideration and the Indemnity Escrow Fund (each adjusted per the terms of the Merger Agreement), together with up to 2.05 million shares of Parent Common Stock based on the achievement of certain revenue targets following the closing of the transaction (the "Earn-Out Merger Consideration").

---

[2] Exhibit "A" does not include certain voluminous exhibits, schedules, and other attachments which are referenced in the Merger Agreement. On information and belief, LivePerson is in possession of a complete copy of the Merger Agreement. The Shareholders' Representative will make a complete copy of the Merger Agreement available upon request.

9.      As a result of the merger, LivePerson was in a position to capitalize on the growing demand for proactive chat technology in key markets. In this regard, LivePerson and Proficient developed an integration strategy that would allow LivePerson both to deliver a broader range of products, services and capabilities to new and existing customers and to realize the full potential presented by the opportunities afforded it as a result of the merger. LivePerson's commitment to maintain and grow its customer base, including those then-current or prospective customers of Proficient listed on Annex I ("Company Existing Customers,"), Annex II ("Company Pipeline Customers") and Annex III ("Company Business Development Customers") to the Merger Agreement, was central to this strategy. Further, among other things, acting promptly to transition customers from the Proficient platform to the LivePerson platform was a necessary and key component of LivePerson and Proficient's strategy for maintaining and growing the customer base.

10.     In fact, memorializing its commitment to maintain and grow Proficient's customer base, LivePerson included the following covenant in the Merger Agreement:

> SECTION 6.09.  *Certain Covenants of Parent.*  Parent covenants and agrees in favor of the Shareholders that (i) it shall use commercially reasonable efforts to maintain and grow the customer base of the Company consistent with the practices of Parent and the Company prior to the Closing Date, including, without limitation, supporting

> the efforts to secure the prospective customers set forth
> on Annex II and Annex III hereto, and . . . .

*See* Merger Agreement, Exhibit "A" hereto, at Section 6.09.

### The Earn-Out Payment

11.    The Earn-Out Merger Consideration was to be paid to the Proficient

Shareholders in accordance with the provisions of Section 2.04(b) of the Merger

Agreement by no later than May 15, 2007 (the "Earn-Out Payment Date").  On or

before the Earn-out Payment Date, LivePerson was required to provide the

Shareholders' Representative a memorandum "specifying in reasonable detail (i)

the calculation of Net Annualized Revenue, and (ii) the amount of the Earn-Out

Payment, if any, due to the Shareholders" (the "Earn-Out Notice").  *See* Merger

Agreement, Exhibit "A" hereto, at Section 2.04(b)(iii).

12.    To calculate the Net Annualized Revenue, LivePerson was required to

ascertain the Normalized Monthly Revenue for March 2007 and multiply it by 12.

Pursuant to the terms of the Merger Agreement, Normalized Monthly Revenue was

defined as follows:

> ***"Normalized Monthly Revenue"*** for any given month
> means (a) the monthly recurring revenue which Parent
> books as revenue in that month, according to GAAP,
> generated from Company Existing Customers, Company
> Business Development Customers and Company Pipeline
> Customers (which explicitly excludes (X) any one-time
> or non-recurring revenues such as testing or training fees
> and (Y) any revenue booked by Parent from Company
> Existing Customers, Company Business Development

Customers or Company Pipeline Customers that have indicated to Parent in writing that they intend to cancel their contract and (Z) any revenue recognized by Parent in connection with the provision of professional services (unless such professional services fees are ongoing rather than one-time in nature)), plus (B) one-half of the monthly recurring revenue which Parent books as revenue in that month, according to GAAP, generated by Company Business Development Customers or Company Pipeline Customers that are on a 90-day paid trial contract, plus (C) the monthly recurring revenue which Parent books as revenue in that month, according to GAAP, generated from the customer, if any, of Parent that is listed on Annex II next to the phrase "(the least of any of the four)" that generates the least amount of revenue for Parent in that month, plus (D) the most recent full month's revenue of any Company Existing Customer that terminated their contract following the Closing due to a material breach of their contract and where such contract termination was specifically due to such breach.

*See* Merger Agreement, Exhibit "A" hereto, at Section 1.01 (emphasis in original).

13.    The number of shares of Parent Common Stock comprising the Earn-Out Payment, in turn, is a function of Net Annualized Revenue, as prescribed by the provisions of Section 2.04(b)(i) of the Merger Agreement.

14.    LivePerson provided Mr. Freishtat, as Shareholders' Representative, with the Earn-Out Notice, which was received on May 11, 2007. The Earn-Out Notice furnished by LivePerson stated that, "[t]he amount of the Net Annualized Revenue is $3,368,108," and "[t]he amount of the Earn-Out Payment due to the Shareholders is 1,132,341 shares of Parent Common Stock." A copy of the Earn-Out Notice, which is hereby incorporated by reference, is attached as Exhibit "B."

15.    LivePerson delivered the amount of shares of Parent Common Stock reflected in the Earn-Out Notice to the Shareholders Representative.

16.    The closing price of LivePerson's common stock as of May 11, 2007, was $6.52 per share.

## The Review Period

17.    The Merger Agreement provides that:

> During a period beginning on the Earn-Out Payment Date and ending two months thereafter (the "**_Review Period_**"), the Shareholders' Representative shall have the right to request and promptly receive all documentation and records used in, or that reasonably should have been considered for use in, the preparation of any Earn-Out Notice, including, but not limited to, copies of all contracts with Company Existing Customers, Company Business Development Customers and Company Pipeline Customers and related agreements, documentation and payments to Parent, Company or any of their respective Affiliates ("**_Supporting Documentation_**").

_See_ Merger Agreement, Exhibit "A" hereto, at Section 2.04(b)(iv) (emphasis in original).

18.    The Merger Agreement further provides that, "[a]t any time during the Review Period, the Shareholders' Representative shall have the right to object in writing to any item (or any calculation thereof) on the Earn-Out Notice (an "**_Earn-Out Dispute Notice_**"). _See_ Merger Agreement, Exhibit "A" hereto, at Section 2.04(b)(v) (emphasis in original).

### LivePerson's Failure to Provide the Supporting Documentation

19.    On or about April 18, 2007, LivePerson provided Mr. Freishtat with a "draft of the earn-out." Given that the Net Annualized Revenue and Earn-Out Payment amounts reflected in the "draft of the earn-out" fell far short of the various projections furnished to him at various times since the Effective Time of the merger, and recognizing that he would need to obtain and review all Supporting Documentation as early as possible to fulfill his obligations as Shareholders' Representative within the two-month Review Period, on April 24, 2007, Mr. Freishtat requested that LivePerson provide him with various information and documentation contemplated by the Merger Agreement. A copy of Mr. Freishtat's counsel's letter dated April 24, 2007, which is hereby incorporated by reference, is attached as Exhibit "C."

20.    At or near the time it provided the Shareholders' Representative with the Earn-Out Notice on May 11, 2007, LivePerson provided the Shareholders' Representative with some very limited and incomplete documentation. The documentation provided was insufficient for purposes of determining or verifying the Net Annualized Revenue reflected on the Earn-Out Notice.

21.    On May 17, 2007, after reviewing and analyzing the limited documentation provided by LivePerson and determining that it was incomplete and insufficient, Mr. Freishtat again requested that LivePerson provide him with all

8

Supporting Documentation. Further, Mr. Freishtat requested that, "[i]f, for any reason, LivePerson refuses to provide any of the information or documentation referenced in my April 24, 2007, letter or in this letter, we ask that you promptly advise us of LivePerson's rationale for refusing to make the requested information or documentation available so that we can attempt in good faith to resolve any differences we might have in this regard." A copy of Mr. Freishtat's counsel's letter dated May 17, 2007, which is hereby incorporated by reference, is attached as Exhibit "D."

22.    On May 23, 2007, having not received any further Supporting Documentation from LivePerson, Mr. Freishtat inquired concerning the status of the information and documentation requested from LivePerson. A copy of Mr. Freishtat's counsel's letter dated May 23, 2007, which is hereby incorporated by reference, is attached as Exhibit "E."

23.    Under cover of a letter from LivePerson's VP/Controller, Michael Kovach, dated May 24, 2007, LivePerson provided the Shareholders' Representative with a few additional documents, but generally ignored the Shareholders' Representatives' requests for information and documentation dated April 24, 2007, May 17, 2007, and May 23, 2007, Exhibits "C," "D" and "E," respectively. Instead of providing the Supporting Documentation as required by the terms of the Merger Agreement, LivePerson complained that one of the

requests made (*i.e.,* documentation of all revenues recognized by LivePerson for each of the last four months) was extremely broad and beyond the scope of the information to which the Shareholders' Representative was entitled. Mr. Kovach then offered to make "certain additional information" available for inspection at LivePerson's offices in New York and concluded by stating that, "[i]t is my understanding that the information listed above together with the information provided on May 11, 2007, constitutes all information required for your review. Should you believe that any items are outstanding, please identify them with specificity so that I can provide them." Under cover of a separate letter dated May 25, 2007, Mr. Kovach then provided Mr. Freishtat with a few additional documents.

24.    In response, on May 25, 2007, Mr. Freishtat reiterated his request for the information and documentation described in the April 24, 2007, and May 17, 2007, letters, Exhibits "C" and "D," respectively. A copy of Mr. Freishtat's counsel's letter dated May 25, 2007, which is hereby incorporated by reference, is attached as Exhibit "F."

25.    In an effort to obtain the information and documentation to which he was entitled, but which LivePerson repeatedly had refused to provide to him, Mr. Freishtat had his outside consultants travel to LivePerson's New York offices to review additional documentation. At LivePerson's request and as a prerequisite to

the outside consultants' visit to LivePerson's offices in New York, Mr. Freishtat

provided LivePerson with an initial list of information and documentation that his

outside consultants wanted to review during their visit. A copy of Mr. Freishtat's

counsel's letter dated May 29, 2007, which is hereby incorporated by reference, is

attached as Exhibit "G."

26.    When Mr. Freishtat's outside consultants' arrived at LivePerson's

offices in New York to review the information and documentation listed in the

May 29, 2007, letter, Exhibit "G," they were informed by Mr. Kovach that he had

not gathered the requested information and documentation and that he was not

going to provide the information and documentation requested. After some

discussion, and by working with Mr. Kovach over the course of parts of two days,

Mr. Freishtat's outside consultants were able to obtain some limited information

that was relevant to the earn-out issues, but LivePerson refused to allow Mr.

Freishtat's outside consultants to have copies of the documents they reviewed.

Further, though limited in nature, the information provided by LivePerson raised

further questions concerning LivePerson's calculation of Net Annualized Revenue.

27.    As a result, and because information and documentation requested on

several prior occasions, including by the above-referenced letters dated April 24,

2007, May 17, 2007, May 23, 2007, May 25, 2007, and May 29, 2007, Exhibits

"C," "D," "E," "F," and "G," respectively, still had not been made available, on

June 15, 2007, Mr. Freishtat reiterated his requests and further explained his need for the requested information and documentation. A copy of Mr. Freishtat's counsel's letter dated June 15, 2007, which is hereby incorporated by reference, is attached as Exhibit "H."

28.    LivePerson responded to the Shareholders' Representative's most-recent attempt to obtain the necessary information and documentation through its counsel's letter dated June 22, 2007. LivePerson again ignored the Shareholders' Representative's request for information and documentation, chose instead to argue ultimate factual and legal conclusions, and concluded by stating that, "LivePerson believes that it has been responsive to all requests and has provided to you all information required to be provided by the Merger Agreement . . . ."

29.    On June 28, 2007, Mr. Freishtat again requested various Supporting Documentation to which he was entitled pursuant to the terms of the Merger Agreement. Because the end of the Review Period was quickly approaching, the Shareholders' Representative requested that LivePerson provide the information referenced in the June 28, 2007, letter by no later than July 3, 2007. A copy of Mr. Freishtat's counsel's letter dated June 28, 2007, which is hereby incorporated by reference, is attached as Exhibit "I."

30.    On July 3, 2007, counsel for LivePerson notified Mr. Freishtat's counsel that, "[d]ue to the fact that we are still gathering the information requested

12

in your letter, we will not be able to send it out later today as requested. Instead, we intend to send it out later this week, so that we can send you a complete (rather than rushed) response."

31.     LivePerson responded to the June 28, 2007, letter, Exhibit "I," on Friday afternoon, July 6, 2007. The response provided a few additional documents, but failed to respond, either in whole or in part, to various requests for information and documentation set forth in the June 28, 2007, letter, Exhibit "I," and raised further issues and concerns relating to the calculation of Net Annualized Revenue.

32.     As a result, Mr. Freishtat responded on July 10, 2007, providing a list of the information and documentation that LivePerson failed to provide and explaining that LivePerson's July 6, 2007, letter and attached documentation raised additional issues and concerns relating to one customer in particular. Mr. Freishtat demanded that LivePerson provide it with the requested information and documentation by no later than 5:00 pm (Eastern Time) on Friday, July 13, 2007. A copy of Mr. Freishtat's counsel's letter dated July 10, 2007, which is hereby incorporated by reference, is attached as Exhibit "J."

33.     LivePerson responded to the July 10, 2007, letter, Exhibit "J," on Wednesday afternoon, July 17, 2007. The response provided one document to Mr. Frieshtat and otherwise failed to respond, either in whole or in part, to the various

requests for information and documentation set forth in the July 10, 2007, letter, Exhibit "J."

## The Earn-Out Dispute Notice

34.    On July 9, 2007, Mr. Freishtat delivered an Earn-Out Dispute Notice to LivePerson. The Earn-Out Dispute contains the Shareholders' Representative's objections to various items, and the calculation thereof, listed on the Earn-Out Notice, Exhibit "B." A copy of the Earn-Out Dispute Notice dated July 9, 2007, which is hereby incorporated by reference, is attached as Exhibit "K."

35.    The Earn-Out Dispute Notice, Exhibit "K," provides, in part, as follows:

> The difference between the revenue that was booked or recognized (or should have been booked or recognized) by LivePerson in March 2007 and the amount included in the Earn-Out Notice exceeds $75,701. Pursuant to the terms of the Merger Agreement, this correlates to an underpayment of at least 844,823 shares of Parent Common Stock.
>
> As noted in prior correspondence, LivePerson repeatedly has failed to provide Mr. Freishtat with complete Supporting Documentation as required by Section 2.04(b)(iv) of the Merger Agreement. As a result, Mr. Freishtat's efforts to fully ascertain the extent and nature of further deficiencies in the Earn-Out Notice, if any, have been materially compromised. Accordingly, Mr. Freishtat hereby expressly reserves the right to amend this Earn-Out Dispute Notice once he has received and had a reasonable opportunity to review all Supporting Documentation previously requested.

*See* Earn-Out Dispute Notice, Exhibit "K," at page 3.

36.    In the event that the Shareholders' Representative and LivePerson are unable to resolve the dispute within fifteen (15) Business Days of delivery of the Earn-Out Dispute Notice to LivePerson, any accounting issues that are in dispute shall be submitted to an Accounting Referee.

37.    All conditions precedent have been performed or have occurred.

## COUNT I

## DECLARATORY JUDGMENT

38.    Mr. Freishtat hereby incorporates the allegations contained in paragraphs 1 through 37 above as if fully set forth herein.

39.    This is an action for declaratory judgment brought pursuant to 28 U.S.C. § 2201.

40.    An actual controversy exists between the parties concerning whether, pursuant to the terms of the Merger Agreement, LivePerson is obligated to make available to the Shareholders' Representative those documents requested in the April 24, 2007, May 17, 2007, May 23, 2007, May 25, 2007, May 29, 2007, June 15, 2007, June 28, 2007, and July 10, 2007 letters, Exhibits "C," "D," "E," "F," "G," "H," "I" and "J," respectively.

41.    The Shareholders' Representative contends that the information and documentation requested in the April 24, 2007, May 17, 2007, May 23, 2007, May

25, 2007, May 29, 2007, June 15, 2007, June 28, 2007, and July 10, 2007 letters,

Exhibits "C," "D," "E," "F," "G," "H," "I" and "J," respectively, constitute

documentation and records used in, or that reasonably should have been considered

for use in, the preparation of the Earn-Out Notice, Exhibit "B," and, therefore, are

Supporting Documentation as that term is defined pursuant to Section 2.04(b)(iv)

of the Merger Agreement.  The Shareholders' Representative further contends that

LivePerson is obligated pursuant to the terms of the Merger Agreement to

promptly provide the requested information and documentation to him.

 42. LivePerson, however, contends that the information and

documentation requested in the April 24, 2007, May 17, 2007, May 23, 2007, May

25, 2007, May 29, 2007, June 15, 2007, June 28, 2007, and July 10, 2007 letters,

Exhibits "C," "D," "E," "F," "G," "H," "I" and "J," respectively, exceeds the scope

of Supporting Documentation as that term is used in the Merger Agreement.

LivePerson further contends that it has been responsive to all requests and has

provided the Shareholders' Representative with all of the information and

documentation that it is required to provide pursuant to the terms of the Merger

Agreement.

 43. To fulfill his obligations to the Proficient Shareholders, the

Shareholders' Representative requires access to the requested information and

documentation so that he can determine whether the amount of Net Annualized

Revenue, and, consequently, the amount of Parent Common Stock comprising the Earn-Out Payment, reported by LivePerson in the Earn-Out Notice is accurate or whether there has been an underpayment of Parent Common Stock by as much as 844,823 shares or more.

44.    Further, because the requested information and documentation is required for the Shareholders' Representative to determine whether the amount of Net Annualized Revenue, and, consequently, the amount of Parent Common Stock comprising the Earn-Out Payment, reported by LivePerson in the Earn-Out Notice is accurate or whether there has been an underpayment of Parent Common Stock, it is critical that the Shareholders' Representative be provided with the requested information and documentation prior to submission of any disputed accounting issues to an Accounting Referee.  Otherwise, the Shareholders' Representative will not be able to fulfill his obligation to properly, fully and fairly represent the interests of the Shareholders in connection with the possible submission of disputes concerning accounting issues to an Accounting Referee.

45.    Thus, there is an actual controversy concerning the Shareholders' Representative's rights under the Merger Agreement to receive the information and documentation requested in the April 24, 2007, May 17, 2007, May 23, 2007, May 25, 2007, May 29, 2007, June 15, 2007, June 28, 2007, and July 10, 2007 letters, Exhibits "C," "D," "E," "F," "G," "H," "I" and "J," respectively and, unless this

controversy is timely resolved, the Proficient Shareholders will be materially prejudiced.

**WHEREFORE**, Mr. Freishtat respectfully requests that this Court enter judgment:

(a)    declaring that the information and documentation requested in the April 24, 2007, May 17, 2007, May 23, 2007, May 29, 2007, June 15, 2007, June 28, 2007, and July 10, 2007 letters, Exhibits "C," "D," "E," "F," "G," "H" and "I," respectively, constitute documentation and records used in, or that reasonably should have been considered for use in, the preparation of the Earn-Out Notice, Exhibit "B," and, therefore, are Supporting Documentation as that term is defined pursuant to Section 2.04(b)(iv) of the Merger Agreement;

(b)    declaring that LivePerson is obligated pursuant to the terms of the Merger Agreement to promptly provide the requested information and documentation to the Shareholders' Representative; and,

(c)    awarding such further relief to the Shareholders' Representative as this Court deems just and proper.

## COUNT II

### INJUNCTIVE RELIEF

46.    Mr. Freishtat hereby incorporates the allegations contained in

paragraphs 1 through 45 above as if fully set forth herein.

47.    To fulfill his obligations to the Proficient Shareholders, the Shareholders' Representative requires access to the requested information and documentation so that he can determine whether the amount of Net Annualized Revenue, and, consequently, the amount of Parent Common Stock comprising the Earn-Out Payment, reported by LivePerson in the Earn-Out Notice is accurate or whether there has been an underpayment of Parent Common Stock by as much as 844,823 shares or more.

48.    Further, because the requested information and documentation is required for the Shareholders' Representative to determine whether the amount of Net Annualized Revenue, and, consequently, the amount of Parent Common Stock comprising the Earn-Out Payment, reported by LivePerson in the Earn-Out Notice is accurate or whether there has been an underpayment of Parent Common Stock, it is critical that the Shareholders' Representative be provided with the requested information and documentation prior to submission of any disputed accounting issues to an Accounting Referee.  Otherwise, the Shareholders' Representative will not be able to fulfill his obligation to properly, fully and fairly represent the interests of the Shareholders in connection with the possible submission of disputes concerning accounting issues to an Accounting Referee.

49.    As more fully described above, LivePerson has failed or refused to provide the Shareholders' Representative with the Supporting Documentation as required pursuant to the terms of the Merger Agreement.

50.    The Shareholders' Representative does not have an adequate remedy at law available for LivePerson's failure to provide the Supporting Documentation to him.

51.    If LivePerson does not produce the Supporting Documentation, the Shareholders' Representative cannot fully and fairly represent the interests of Proficient's Shareholders as contemplated by the terms of the Merger Agreement. Consequently, the continued refusal on the part of LivePerson to provide the Shareholders' Representative with the Supporting Documentation will cause both Mr. Freishtat and the Proficient Shareholders irreparable harm.

52.    The Shareholders' Representative has a high likelihood of success on the merits of this issue, as LivePerson has failed to promptly provide him with necessary Supporting Documentation as required by the Merger Agreement.

**WHEREFORE**, Mr. Freishtat respectfully requests that this Court enter an order in favor of the Shareholders' Representative and against LivePerson that:

(a)    orders LivePerson to promptly provide the information and documentation requested in the April 24, 2007, May 17, 2007, May 23, 2007, May 25, 2007, May 29, 2007, June 15, 2007, June 28, 2007, and July 10, 2007 letters,

Exhibits "C," "D," "E," "F," "G," "H," "I" and "J," respectively, to the

Shareholders' Representative;

(b)     enjoins LivePerson from submitting any accounting issues that

are in dispute to an Accounting Referee until fifteen (15) Business Days following

delivery of all requested information and documentation to the Shareholders'

Representative; and,

(c)     awards the Shareholders' Representative such other relief as

this Court deems just and proper.

## COUNT III

## BREACH OF MERGER AGREEMENT

53.     Mr. Freishtat hereby incorporates the allegations contained in

paragraphs 1 through 37 above as if fully set forth herein.

54.     Pursuant to Section 6.09 of the Merger Agreement, LivePerson was

obligated to use commercially reasonable efforts to maintain and grow the

customer base of Proficient consistent with the practices of both LivePerson and

Proficient.

55.     LivePerson breached its obligation pursuant to Section 6.09 of the

Merger Agreement to use commercially reasonable efforts to maintain and grow

the customer base of Proficient by, among other things,

(a)    failing or refusing to communicate regularly with Proficient's customers, provide them with a level of care and service consistent with the practices of LivePerson and Proficient, or otherwise endeavor to cultivate and expand the customer relationship;

(b)    failing or refusing to timely transition Proficient's customers from the Proficient platform to the LivePerson platform; and,

(c)    failing or refusing to support the efforts to secure the prospective customers set forth on Annex II and Annex III.

56.    As a result of LivePerson's breach of its obligation pursuant to Section 6.09 of the Merger Agreement to use commercially reasonable efforts to maintain and grow the customer base of Proficient, the Net Annualized Revenue reported on the Earn-Out Notice and, consequently, the Earn-out Payment were less than they otherwise should have been.

57.    Further, LivePerson was obligated to properly account for Net Annualized Revenue as defined in the Merger Agreement.

58.    LivePerson breached its obligation to properly account for Net Annualized Revenue as defined in the Merger Agreement by, among other things,

(a)    failing or refusing to include the monthly recurring revenue that was booked or recognized, or that should have been booked or recognized, in March 2007;

(b)    failing or refusing to include recurring, as opposed to one-time or non-recurring, revenue that was booked or recognized, or that should have been booked or recognized, in March 2007;

(c)    failing or refusing to include revenue from Company Existing Customers, Company Business Development Customers or Company Pipeline Customers that indicated to LivePerson that they did not intend to renew their contracts to the extent that such revenue was booked or recognized, or should have been booked or recognized, in March 2007;

(d)    failing or refusing to include ongoing professional services revenue that was booked or recognized, or that should have been booked or recognized, in March 2007;

(e)    failing or refusing to include recurring monthly revenue generated by Company Business Development Customers or Company Pipeline Customers on paid trial contracts (a/k/a, "proof of concept" or "POC" contracts) that was booked or recognized, or that should have been booked or recognized, in March 2007; and,

(f)    failing or refusing to include recurring monthly revenue that would have been recognized or booked in March 2007 had LivePerson fulfilled its obligation pursuant to Section 6.09 of the Merger Agreement to use commercially reasonable efforts to maintain and grow the customer base of Proficient.

59.     As a result of LivePerson's breach of its obligation to properly account for Net Annualized Revenue as defined in the Merger Agreement, the Net Annualized Revenue reported on the Earn-Out Notice and, consequently, the Earn-out Payment were less than they otherwise should have been.

60.     In addition, LivePerson was obligated pursuant to Section 2.04(b)(iv) of the Merger agreement to provide the Shareholders' Representative with all requested Supporting Documentation.

61.     LivePerson breached its obligation to provide the Shareholders' Representative with all requested Supporting Documentation as more fully described in paragraphs 19 through 33 above.

62.     As a direct and proximate result of LivePerson's various breaches of its obligations set forth above, the Proficient Shareholders have suffered, and are continuing to suffer, damages.  These damages include, without limitation, the value of any underpayment of shares of Parent Common Stock by LivePerson, as well as any damages suffered as a result of LivePerson's failure or refusal to timely deliver shares of Parent Common Stock to the Shareholders.

**WHEREFORE**, Mr. Freishtat respectfully requests that this Court enter judgment in his favor, as Shareholders' Representative, and against LivePerson for damages, together with prejudgment interest and costs, and such further relief as this Court deems just and proper.

Respectfully submitted this ___ day of July, 2007.

**DLA PIPER US LLP**

Christopher G. Campbell (CC 3940)
1201 West Peachtree Street
Suite 2800
Atlanta, Georgia 30309-3450
Telephone:  (404) 736-7800
Facsimile:  (404) 682-7800

Of Counsel:
Arthur D. Brannan, Esq.
DLA Piper US LLP
1201 West Peachtree Street
Suite 2800
Atlanta, Georgia 30309-3450
Telephone:  (404) 736-7800
Facsimile:  (404) 682-7800

*Attorneys for Plaintiff,*
*Gregg Freishtat, as Shareholders' Representative*

BALTI\4359336.3