# EXHIBIT

# "B"

# PROSKAUER ROSE LLP

1585 Broadway
New York, NY 10036-8299
Telephone 212.969.3000
Fax 212.969.2900

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

Jeremy Lechtzin
Attorney at Law

Direct Dial 212.969.3149
jlechtzin@proskauer.com

May 10, 2007

**Via FedEx**

Joseph G. Silver, Esq.
DLA Piper US LLP
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, GA 30309-3450

Re:     Agreement and Plan of Merger, dated as of June 22, 2006, among LivePerson, Inc., Soho
        Acquisition Corp., Proficient Systems, Inc. and Gregg Freishtat as Shareholders'
        Representative (the "Agreement")

Dear Mr. Silver:

At the request of Mr. Freishtat, I am sending to you the enclosed documents listed below in
connection with the Agreement:

      (1) the Earn-Out Notice;

      (2) the stock certificates for the Earn-Out Merger Consideration; and

      (3) the current list of Shareholder addresses and telephone numbers as provided by the
      Shareholders in their Letters of Transmittal and related documentation submitted to
      Parent through today's date pursuant to Section 2.05 of the Agreement.

The checks for the Cash Equivalent Amount of the Earn-Out Merger Consideration to which
Non-Accredited Shareholders are entitled are being sent to you today by LivePerson under
separate cover.

In addition, pursuant to Section 11.02 of the Agreement, Mr. Freishtat is requested to substitute
the firm of Wilmer Cutler Pickering Hale & Dorr LLP in place of the reference to Proskauer
Rose LLP for use in connection with all future notices to Parent and direct such notices:

PROSKAUER ROSE LLP

Joseph G. Silver, Esq.
May 10, 2007
Page 2

if to the Parent, to:

> LivePerson, Inc.
> 462 Seventh Avenue, 3rd Floor
> New York, New York 10018
> Attention:  Timothy E. Bixby

with a copy (which shall not constitute notice) to:

> Wilmer Cutler Pickering Hale & Dorr LLP
> 399 Park Avenue
> New York, New York 10022
> Attention:  Brian B. Margolis, Esq.

Sincerely,

Jeremy Lechtzin

cc:    Gregg Freishtat – Shareholders' Representative
       Timothy E. Bixby – LivePerson, Inc.
       Arthur D. Brannan, Esq. – DLA Piper US LLP
       Brian B. Margolis, Esq. – Wilmer Cutler Pickering Hale & Dorr LLP

LIVEPERSON, INC.

Earn-Out Notice

To:    Gregg Freishtat as Shareholders' Representative

Pursuant to Section 2.04(b)(iii) of the Agreement and Plan of Merger, dated as of June 22, 2006, among LivePerson, Inc., Soho Acquisition Corp., Proficient Systems, Inc. and Gregg Freishtat as Shareholders' Representative (the "Agreement"), LivePerson hereby advises you that:

(1)    The amount of Net Annualized Revenue is $3,368,108.  The calculation of Net Annualized Revenue is detailed on Schedule A attached hereto.

(2)    The amount of the Earn-Out Payment due to the Shareholders is 1,132,341 shares of Parent Common Stock (for the avoidance of doubt, such amount includes shares in respect of which Non-Accredited Shareholders will receive the Cash Equivalent Amount).

Capitalized terms used herein and not defined upon first usage shall have the meanings assigned such terms in the Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Earn-Out Notice as of the 9th day of May 2007.

LIVEPERSON, INC.

By: _____
Name: Timothy E. Bixby
Title: President and Chief Financial Officer

SCHEDULE A

| | Actual RMR January | Actual RMR February | Actual RMR March | Adjustments to March RMR | Amount Included in earn-out | Explanation |
|---|---|---|---|---|---|---|
| Alliance & Leicester | 13,601 | 13,601 | 13,601 | - | 13,601 | |
| Barclays | - | - | - | - | - | - Not expected to go live - original contract signed Sept. 2005 |
| Citibank (UK) | - | - | - | - | - | - Did not renew after initial POC |
| HBOs | - | - | - | - | - | |
| HSBC (UK) | 11,490 | 11,490 | 11,490 | - | 11,490 | |
| Kuoni Travel | 20,475 | 20,475 | 20,475 | - | 20,475 | |
| MO Nationwide | 5,850 | 5,850 | 5,850 | - | 5,850 | - Expected to go live in May. Include 50% of POC RMR of $15,730 |
| Nationwide | - | - | - | - | - | |
| RBS Insurance | 3,120 | 3,120 | 3,120 | - | 3,120 | - Did not renew after initial POC |
| RBS Retail Banking | 16,234 | 16,234 | 16,234 | - | 16,234 | |
| AllergyBuyers | 6,700 | 6,700 | 6,700 | - | 6,700 | |
| Carlson (Saturn – G&I) | 10,000 | 10,000 | 10,000 | - | 10,000 | |
| CarMax | 22,000 | 22,000 | - | - | - | - Cancelled - moved to Instant Service |
| Collegiate Funding Services | 4,500 | 4,500 | 4,500 | - | 4,500 | |
| Comparison Market | 10,500 | 10,500 | 10,500 | - | 10,500 | |
| E*Trade | 3,268 | 3,268 | 3,268 | - | 3,268 | |
| Geico | 49,599 | 49,399 | 56,350 | - | 56,350 | Includes impact of 6 month risk premium. |
| Home Depot | 28,215 | 28,215 | 28,215 | - | 28,215 | |
| Home Depot (HomeDecorators.com) | 3,000 | 3,000 | - | - | - | Did not renew after initial POC - licenses included in Home Depot |
| Huntington | - | - | - | - | - | |
| JP Morgan Chase | 5,206 | 5,206 | 5,206 | - | 5,206 | |
| Ohio Savings Bank | 12,000 | 12,000 | 12,000 | - | 12,000 | |
| SelectQuote | - | - | - | - | - | - Did not renew after initial POC |
| web.cam | 4,000 | 4,000 | 4,000 | - | 4,000 | |
| First Citizens Bank | - | - | - | - | - | - Cancelled - never went live |
| HomeBanc | - | - | - | - | - | - Did not renew after initial POC |
| IBM | - | - | - | - | - | - Not expected to go live - original contract signed Mar. 2006 |
| InterTel | 7,956 | 7,956 | 16,750 | - | 16,750 | |
| Trilogy | 3,240 | 3,240 | 3,240 | - | 3,240 | |
| CorCell | 2,500 | 2,500 | 2,500 | - | 2,500 | - Did not renew after initial POC |
| Adobe | - | 15,000 | 15,000 | - | - | |
| Allstate | 10,500 | 10,500 | 15,000 | (7,500) | 7,500 | POC revenue only - include 50% per agreement |
| Cisco | 15,000 | 15,000 | 15,000 | (10,500) | - | Cancelled effective April 30, 2007 |
| E-Loan | 7,500 | 7,500 | 15,000 | - | 15,000 | |
| H&R Block | 6,950 | 6,950 | 6,950 | - | 7,500 | |
| Mark Travel | 10,000 | 2,667 | 6,950 | (6,950) | 5,000 | - cancel effective 6/22 |
| National City | 2,000 | 2,000 | 2,000 | 3,000 | 5,000 | Extended POC - include 50% of POC RMR (expected to renew at $5,000 per month] |
| Lloyds TSB | - | - | 16,292 | (8,517) | 2,500 | |
| | | | | | 9,775 | POC revenue only - include 50% per agreement |
| | 265,200 | 302,873 | 307,143 | | | |

| | | |
|---|---|---|
| 283,870 | Recurring Monthly Revenue | |
| 12 | Number of months per asset purchase agreement | |
| 3,386,108 | Annualized Revenue | |
| 0.93 | Earn-out Formula | |
| 3,152,340 | subtotal | |
| 2,000,000 | Shares effectively issued | |
| 1,132,340 | Additional shares to issue | |
| 1 | Rounding | |
| 1,132,341 | Total Shares Issued per Earn-Out Notice | |

[BACK-UP DOCUMENTATION OMITTED]



| Name | Calculated Share Distribution | Actual Share Distribution (Net of cash paid in lieu of shares to non-accredited investors) | Actual Cash Distribution |
|---|---|---|---|
| Elizabeth W. Abernathy | 66 | 66 | $ - |
| Advratchenler GMAV Information and Communication Technology NV | 48,408 | 48,408 | $ - |
| James W. Brackley | 56,817 | 56,817 | $ - |
| Roy F. Cammarano | 165 | 165 | $ - |
| John H. Cassoo | 1,256 | 1,256 | $ - |
| Carna Gates | 1,520 | 1,520 | $ - |
| Dubrow Family Ventures, LLC | 330 | 330 | $ - |
| Eusai Partners, LLC | 330 | 330 | $ - |
| Franklin Street Investments, LLC | 188 | 188 | $ - |
| Gregg Freishtat | 57,536 | 57,536 | $ - |
| Fulmned Ventures Limited | 28,056 | 28,056 | $ - |
| Fuqua Venture Partners II, LLC | 85,235 | 85,235 | $ - |
| Raymond D. Gieary & Elizabeth A. Gentry | 517 | 517 | $ - |
| GMAV NV | 274,316 | 274,316 | $ - |
| Marc J. Gorlin Revocable Trust Dated 10/23/98, Marc J. Gorlin, Trustee | 39 | 39 | $ - |
| Adrian M. Grant | 33 | 33 | $ - |
| Leonard J. Grossman | 231 | 231 | $ - |
| Eric W. Hanz | 66 | 66 | $ - |
| J. Stephen Huxford | 1,259 | 1,259 | $ - |
| James N. Huxford Trust | 165 | 165 | $ - |
| Jenny T. Hultford | 66 | 66 | $ - |
| Pete Koh | 617 | - | $ - |
| Michael E. Karin | 339 | 339 | $ - |
| David Rassens | 887 | - | $ - |
| Craig H. Kessler and Judi R. Kessler | 82 | 82 | $ - |
| Kinetic Ventures VII, LLC | 148,909 | 148,909 | $ - |
| Christopher W. Klaus | 330 | 330 | $ - |
| Labrador Ventures IV, L.P | 86,233 | 86,233 | $ - |
| New W. McEwen | 2,684 | 2,684 | $ - |
| Albert Dodger McFaf Jr. | 1,365 | 1,365 | $ - |
| Greg Maisse | 66 | 66 | $ - |
| MINES, LLC | 17,098 | 17,098 | $ - |
| Terry L. Moore, IV | 808 | 808 | $ - |
| Matthew H. Heubinger and Susan L. Heubinger | 386 | 386 | $ - |
| NSK Investment Partnership | 142,675 | 142,675 | $ - |
| Number 3 Investment Partners, LLLP | 57,418 | 57,418 | $ - |
| PANICA INV | 3,008 | 3,008 | $ - |
| Josef Rod | 4,371 | 4,371 | $ - |
| RBC Dais Rauscher as Custodian Rise Pierce G. Jones IRA | 3,008 | 3,008 | $ - |
| Richard B. Ressler | 9,404 | 9,404 | $ - |
| John A. Richards | 2,920 | 2,920 | $ - |
| Visaal Ripkinghani | 5,058 | 5,058 | $ - |
| Rentaan Humphrey Netarks Fund I, L.P. | 495 | 495 | $ - |
| Randolph W. Salsbury and Julie D. Salsbury | 163 | 163 | $ - |
| Sendolull, LLC | 1,244 | 1,244 | $ - |
| Craig C. Sellers | 46 | 46 | $ - |
| Sampson Partners, LLC | 3,987 | 3,987 | $ - |
| Jack Shewmaker | 660 | 660 | $ - |
| Chris W. Simpson | 255 | 259 | $ - |
| Jack W. Simpson, Sr. Revocable Trust | 1,262 | 1,262 | $ - |
| Stephann Smith | 56,817 | 56,817 | $ - |
| Troll Trousdell | 66 | 66 | $ - |
| TW Investment Holdings LLC (NO CERTIFICATE OR CASH-see below) | 24,125 | 23,054 | 3,322.00 |
| Harvey A. Wagner | 1,671 | 1,671 | $ - |
| Albert Dodger Wilson, III | 780 | 780 | $ - |
| Jackson L. Wilson, III | 750 | 750 | $ - |
| Yaron Yajiv | 59 | 59 | $ - |
| TOTAL | 1,132,341 | 1,128,671 | $ 13,162.50 |

TW Investment Holdings LLC members:

| Name | | | |
|---|---|---|---|
| Hugh S. Asher | 26 | 26 | $ |
| Juliet R. Asher | 34 | 34 | $ |
| James Shalr Alutna | 44 | | $ |
| Stephen M. Balton | 34 | 34 | $ |
| Flavio R. Barbosa | 22 | 22 | $ |
| Elizabeth M. Berry | 1,028 | | $ 209.00 |
| Leonard E. Borg, Jr. | 1,127 | 1,127 | $ |
| Philip E. J. Crown | 397 | 397 | $ |
| Joseph M. Ferguson, III | 15 | 15 | $ 4,969.00 |
| First Growth Capital Inc. | 198 | 198 | $ |
| FJC Growth Capital Corporation | 198 | 198 | $ |
| Robert J. Fogelson | 2,470 | 2,470 | $ |
| Alien R. Graber | 1,340 | 1,340 | $ |
| Jerrold J. Graber | 1,587 | 1,587 | $ |
| Julie B. Graber | 778 | 778 | $ |
| Martha S. Graber | 778 | 778 | $ |
| James Gross | 172 | 172 | $ |
| John P. Imlay, Jr. | 7,262 | 7,262 | $ |
| R. Philip Jarrel, Jr. | 27 | 27 | $ |
| JF Investments Partnership | 341 | 341 | $ |
| Kirk P. Lauterman | 387 | 387 | $ |
| Robyn G. List | 659 | 659 | $ |
| Lucior Partners, Ltd. | 34 | 34 | $ |
| James V. McCloskey | 34 | 34 | $ |
| Memphis Together Partners | 783 | 783 | $ |
| MBG Partners | 68 | 68 | $ |
| NMF Partners | 21 | 21 | $ |
| Oconee Venture Capital Fund 1 LLC | 3,220 | 3,220 | $ |
| William N. Owen | 37 | 37 | $ |
| Charles C. Pick | 37 | 37 | $ |
| Paul T. Putzel & Justin Z. Putzel TTEES UTHA Dtd 9/17/87 | 34 | 34 | $ |
| Robbinson Humphrey Netbma Fund I, LP | 68 | 68 | $ |
| Harry Ridings | 34 | 34 | $ |
| Arthur N. Seloock, III | 34 | 34 | $ |
| Arthur N. Seloock, III Family Trust | | | $ |
| Scott S. Selig | 397 | 397 | $ |
| Sievers Ventures, LLC | 68 | 68 | $ |
| Sievers Ventures, LLC | 21 | 21 | $ |
| Craig Slaven | 51 | 51 | $ |
| TTM Ventures, LLC | 68 | 68 | $ |
| Larry F. Wright, Sr. | 34 | 34 | $ |
| Sub-total for TW Investment Holdings LLC | 24,125 | 20,054 | $ 6,492.00 |

* Shareholders who have previously submitted some documentation but not provided evidence of accredited investor status and therefore LPGN stock certificates must be held pending submission of Investor Questionnaire and Accreditation-Accredited Shareholder Representation Letter. These shareholders have been contacted and certificates will be released promptly after their reply.

** Shareholders who have not responded/submitted any documentation to Parent and therefore LPGN stock certificates must be held pending submission of all documents.

*** Shareholders who have not responded/submitted any documentation but not surrendered their ProForm stock certificates and provided IRS Form W-9 and therefore LPGN stock certificates (or cash) must be held pending surrender of ProForm stock certificates together with a properly executed Letter of Transmittal and IRS Form W-9. These shareholders have been contacted and certificates (or cash) will be released promptly after their reply.

[COPIES OF STOCK CERTIFICATES OMITTED]

[SHAREHOLDER ADDRESS LIST OMITTED]

# EXHIBIT

## "C"

**DLA PIPER**

DLA Piper US LLP
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309-3450
www.dlapiper.com

Arthur D. Brannan
arthur.brannan@dlapiper.com
T  404.736.7803
F  404.682.7800

April 24, 2007

*VIA FACSIMILE AND US MAIL*

Mr. Timothy E. Bixby
LivePerson, Inc.
462 Seventh Avenue, 3rd Floor
New York, NY 10018

Brian B. Margolis, Esq.
Proskauer Rose LLP
1585 Broadway, 23rd Floor
New York, NY 10036

Re:     **Earn-Out Payment pursuant to the Agreement and Plan of Merger among
        LivePerson, Inc., SOHO Acquisition Corp., Proficient Systems, Inc., and Gregg
        Freishtat, as Shareholders' Representative, dated as of June 22, 2006 (the "Merger
        Agreement")**

Dear Mr. Bixby and Mr. Margolis:

Our law firm represents Mr. Gregg Freishtat in his capacity as Shareholders' Representative
pursuant to the Merger Agreement. All capitalized terms used in this letter are intended to have
the same meaning as those used in the Merger Agreement.

Pursuant to Section 2.04(b) of the Merger Agreement, we understand that, while it has not done
so yet, LivePerson will be delivering an Earn-Out Notice, specifying in reasonable detail (i) the
calculation of Net Annualized Revenue, and (ii) the amount of the Earn-Out Payment, to Mr.
Freishtat as Shareholders' Representative on or before the Earn-Out Payment Date, which shall
occur on a date not later than May 15, 2007. We further understand that the certificates for the
Earn-Out Merger Consideration will be delivered to the Shareholders, c/o Mr. Freishtat, at the
Earn-Out Closing, which will occur on the Earn-Out Payment Date. So that Mr. Freishtat can
plan accordingly, we ask that you promptly advise us of the Earn-Out Closing date, time and
location.

It is imperative that the Earn-Out Closing and delivery of the certificates for the Earn-Out
Merger Consideration occur on a date not later than May 15, 2007, in accordance with the terms
of the Merger Agreement. Should the Shareholders suffer any damages as a result of a delay in
the delivery of the certificates for the Earn-Out Merger Consideration, Mr. Freishtat, as

**DLA PIPER**

April 24, 2007
Page Two

Shareholders' Representative, will have no alternative but to seek recovery of those damages from LivePerson.

I understand that Mr. Michael Kovach provided Mr. Freishtat with a "draft of the earn-out" on Wednesday, April 18, 2007, and that this "draft of the earn-out" was **not** intended to constitute the Earn-Out Notice required pursuant to Section 2.04(b)(iii) of the Merger Agreement. If my understanding concerning this matter is incorrect in any way, please immediately notify me.

We also understand that Mr. Freishtat and Mr. Kovach have been communicating concerning various issues relating to the Earn-Out Merger Consideration and that Mr. Freishtat either already has requested or indicated that he intended to request at least some of the information and documentation that he will need to fulfill his obligations as Shareholders' Representative when reviewing the Earn-Out Notice once it is delivered to him. This information and documentation includes, among other things, the following:

    (a)    documentation of any and all revenues of any kind (including, without limitation, revenues from professional services) from all customers, partners and subsidiaries on a month-to-month basis for at least the first quarter of 2007, with appropriate notations of which revenues LivePerson believes should count towards the earn-out calculation;

    (b)    a schedule of all professional services revenue for each customer and its subsidiaries;

    (c)    for each customer, subsidiary and partner, copies of the following:

        (i)    any and all contracts;

        (ii)    any and all POC agreements;

        (iii)    any and all amendments or modifications;

        (iv)    any and all work orders of any kind;

        (v)    any and all invoices;

        (vi)    documents evidencing any and all payments made to LivePerson;

        (vii)    any and all written cancellation notices;

        (viii)    any and all notices of non-renewal;

**DLA PIPER**

April 24, 2007
Page Three

        (ix)    any and all correspondence relating to any cancelled contract or POC;

        (x)    any and all professional services work orders or statements of work; and

        (xi)    any and all professional services billing statements or invoices;

  (d)    any and all documents relating to LivePerson's business dealings or relationship with Churchill and/or RBS;

  (e)    any and all documents relating to LivePerson's business dealings or relationship with Esure and/or HBOS; and

  (f)    a summary of any and all European deals that reflects all pertinent information concerning the currency employed, exchange rates and dates utilized for revenue recognition purposes, etc.

Mr. Freishtat also would appreciate receiving any and all documents related in any way to LivePerson's efforts to maintain and grow the customer base as required by Section 6.09 of the Merger Agreement, including, without limitation, those documents related to LivePerson's efforts to secure the prospective customers set forth on Annex II and Annex III to the Merger Agreement. Further, with respect to any terminated or cancelled customer relationship, he requests that LivePerson provide him with any and all documentation evidencing LivePerson's efforts to maintain, retain or otherwise avoid the termination or cancellation of those customer relationships.

To the extent not already requested, Mr. Freishtat also would appreciate receiving at the earliest opportunity any and all documentation and records that will be used in, or that reasonably could be considered for use in, the preparation of the Earn-Out Notice, including, but not limited to, copies of all contracts with Company Existing Customers, Company Business Development Customers and Company Pipeline Customers and any related agreements, documentation and payments to Parent, Company or any of their respective affiliates.

We acknowledge that LivePerson is not required to provide any of the requested information to Mr. Freishtat unless and until he makes a request during the Review Period, but appreciate any effort on the part of LivePerson to expedite the delivery of this information and documentation directly to Mr. Freishtat as it should facilitate both his preliminary review of the "draft earn-out" already sent to him and his review of the Earn-Out Notice once it is delivered to him. Mr. Freishtat expressly reserves his right pursuant to Section 2.04(b)(iv) of the Merger Agreement, however, to formally request any and all Supporting Documentation at any time during the Review Period.

**DLA PIPER**

April 24, 2007
Page Four

As I am sure LivePerson understands, Mr. Freishtat has an obligation as the Shareholders' Representative to exercise appropriate due diligence in his review and investigation of any and all matters relating to the Earn-Out Merger Consideration. LivePerson's cooperation with regard to furnishing Mr. Freishtat the requested information and documentation will allow him to properly and efficiently fulfill his obligations.

Finally, pursuant to Section 11.02 of the Merger Agreement, please substitute our firm in place of the reference to Kilpatrick Stockton LLP for use in connection with all future notices to the Shareholders' Representative and direct such notices to:

> If to the Company (prior to Closing), or to the Shareholders' Representative
> (After Closing), to:
>
> Proficient Systems, Inc.
> 2859 Paces Ferry Road, Suite 820
> Atlanta, Georgia 30339
> Attention:  Chief Executive Officer
>
> with a copy (which shall not constitute notice) to:
>
> DLA PIPER US LLP
> One Atlantic Center
> 1201 West Peachtree Street, Suite 2800
> Atlanta, Georgia 30309-3450
> Attention:  Joseph G. Silver, Esq.
>           Arthur D. Brannan, Esq.

As Shareholders' Representative, Mr. Freishtat must insist that LivePerson strictly adhere to the terms and conditions set forth in the Merger Agreement in connection with matters relating to the Earn-Out Merger Consideration. In particular, as noted above, Mr. Freishtat must insist that the certificates for the Earn-Out Merger Consideration be delivered by no later than May 15, 2007, and again cautions LivePerson that he will seek to recover any damages suffered as a result of any delay in delivery of those certificates for which it is responsible.

**DLA PIPER**

April 24, 2007
Page Five

If you have any questions or would like to discuss this matter further, please contact either Joseph Silver or me.  Thank you.

Sincerely,

**DLA Piper US LLP**

Arthur D. Brannan

ADB:jmb

cc:    Mr. Gregg Freishtat, Shareholders' Representative
       Joseph G. Silver, Esq.

4331306

# EXHIBIT

# "D"

**DLA PIPER**

DLA Piper US LLP
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309-3450
www.dlapiper.com

Arthur D. Brannan
arthur.brannan@dlapiper.com
T  404.736.7803
F  404.682.7800

May 17, 2007

*VIA UPS OVERNIGHT*

Mr. Timothy E. Bixby
LivePerson, Inc.
462 Seventh Avenue, 5th Floor
New York, NY 10018

Brian B. Margolis, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

Re:   **Earn-Out Payment pursuant to the Agreement and Plan of Merger among LivePerson, Inc., SOHO Acquisition Corp., Proficient Systems, Inc., and Gregg Freishtat, as Shareholders' Representative, dated as of June 22, 2006 (the "Merger Agreement")**

Dear Mr. Bixby and Mr. Margolis:

Our law firm represents Mr. Gregg Freishtat in his capacity as Shareholders' Representative pursuant to the Merger Agreement. All capitalized terms used in this letter are intended to have the same meaning as those used in the Merger Agreement.

We received the Earn-Out Notice and the certificates for the Earn-Out Merger Consideration (along with Jeremy Lechtzin's May 10, 2007, letter) on Friday, May 11, 2007. Accordingly, we consider May 11, 2007, the Earn-Out Payment Date under the terms of the Merger Agreement. If you disagree with our understanding concerning this matter, please immediately notify me.

As we now are in the Review Period, Mr. Freishtat, as Shareholders' Representative, requests that LivePerson provide him with the Supporting Documentation specified in Section 2.04(b)(iv) of the Merger Agreement, which includes all documentation and records used in, or that reasonably should have been considered for use in, the preparation of the Earn-Out Notice, including, but not limited to, copies of all contracts with Company Existing Customers, Company Business Development Customers and Company Pipeline Customers and related agreements, documentation and payments to LivePerson, Proficient or any of their respective affiliates.

**DLA PIPER**

Mr. Timothy E. Bixby
Brian B. Margolis, Esq.
May 17, 2007
Page Two

While we note and appreciate that LivePerson already has provided Mr. Freishtat with some limited documentation, we request, pursuant to Section 2.04(b)(iv) of the Merger Agreement, that LivePerson promptly provide Mr. Freishtat with the balance of the Supporting Documentation. We would expect, at a minimum, that this would include, but not be limited to, the information and documentation referenced in my April 24, 2007, letter, a copy of which is enclosed for your reference. Further, it would be especially helpful if LivePerson could provide the following information and documentation, which comprises a part of the Supporting Documentation, as soon as possible:

      (a)    documentation of all revenues recognized by LivePerson or any of its affiliates, identified by type and customer (*e.g.*, monthly recurring revenues, professional service fees, trial contracts, etc.), for each of the last four months, January through April, 2007;

      (b)    documentation relating to any business dealings between LivePerson or any of its affiliates and Esure, which is a subsidiary of HBOS, and all revenues received in connection with the same;

      (c)    documentation relating to any business dealings between LivePerson or any of its affiliates and Kuoni and all revenues received in connection with the same; and

      (d)    a breakdown, by brand (*e.g.*, Direct Line, Churchill, Privilege, UKI, etc.), of all revenues received by LivePerson or any of its affiliates from RBS.

If, for any reason, LivePerson refuses to provide any of the information or documentation referenced either in my April 24, 2007, letter or in this letter, we ask that you promptly advise us of LivePerson's rationale for refusing to make the requested information or documentation available so that we can attempt in good faith to resolve any differences we might have in this regard.

As the Review Period is relatively short and the time necessary to fully review the Supporting Documentation will be significant, we remind LivePerson of its obligation pursuant to Section 2.04(b)(iv) of the Merger Agreement to deliver all requested Supporting Documentation to Mr. Freishtat promptly. Further, so that Mr. Freishtat and his outside consultants can plan accordingly, we ask that you let us know when we can expect to receive the requested information and documentation.

**DLA PIPER**

Mr. Timothy E. Bixby
Brian B. Margolis, Esq.
May 17, 2007
Page Three

If you have any questions or would like to discuss this matter further, please contact either
Joseph Silver or me.  Thank you.

Sincerely,

**DLA Piper US LLP**

Arthur D. Brannan

ADB/jmb
Enclosure

c:      Mr. Gregg Freishtat, Shareholders' Representative
        Jeremy Lechtzin, Esq.
        Joseph G. Silver, Esq.

BALT1\4336930.2

# EXHIBIT

# "E"

**DLA PIPER**

**DLA Piper US LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309-3450
www.dlapiper.com

Arthur D. Brannan
arthur.brannan@dlapiper.com
**T**  404.736.7803
**F**  404.682.7800

May 23, 2007

*VIA FACSIMILE*

Brian B. Margolis, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

**Re:**    **Earn-Out Payment pursuant to the Agreement and Plan of Merger among LivePerson, Inc., SOHO Acquisition Corp., Proficient Systems, Inc., and Gregg Freishtat, as Shareholders' Representative, dated as of June 22, 2006 (the "Merger Agreement")**

Dear Mr. Margolis:

As noted in my May 17, 2007, letter, the Merger Agreement's Review Period is relatively short and the time necessary to fully review the Supporting Documentation will be significant. Therefore, so that Mr. Freishtat and his outside consultants can plan accordingly, we again ask that you let us know when we can expect to receive the information and documentation requested in my May 17 letter.

If you have any questions or would like to discuss this matter further, please contact either Joseph Silver or me. Thank you.

Sincerely,

**DLA Piper US LLP**

Arthur D. Brannan

ADB/jmb

c:    Mr. Gregg Freishtat, Shareholders' Representative
      Jeremy Lechtzin, Esq.
      Joseph G. Silver, Esq.

4338304

# EXHIBIT

# "F"



DLA Piper US LLP
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309-3450
www.dlapiper.com

Arthur D. Brannan
arthur.brannan@dlapiper.com
T 404.736.7803
F 404.682.7800

May 25, 2007

*Via Electronic and US Mail*

Brian B. Margolis, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

Re:     **Earn-Out Payment pursuant to the Agreement and Plan of Merger among
        LivePerson, Inc., SOHO Acquisition Corp., Proficient Systems, Inc., and Gregg
        Freishtat, as Shareholders' Representative, dated as of June 22, 2006 (the "Merger
        Agreement")**

Dear Mr. Margolis:

Following up on my email request yesterday, consistent with our profession's ethical standards, I will assume that I am to direct all communications concerning Mr. Kovach's May 24, 2007, letter and related email correspondence to you unless you indicate otherwise.

Mr. Freishtat disagrees with Mr. Kovach's conclusions that ". . . all revenues recognized by [LivePerson] for each of the last four months . . . is extremely broad and beyond the scope of the information to which [Mr. Freishtat, as Shareholders' Representative] is entitled" and that ". . . the information listed [in Mr. Kovach's May 24 letter] together with the information provided on May 11, 2007, constitutes all information required for [Mr. Freishtat's] review." Clearly, LivePerson and Mr. Freishtat disagree concerning what constitutes Supporting Documentation pursuant to the terms of the Merger Agreement.

With respect to Mr. Kovach's request that we identify any outstanding items so that LivePerson can provide them to us, we refer you to our letters of April 24 and May 17, 2007. By this letter, we again request that LivePerson provide Mr. Freishtat with all of the information and documents identified in those letters that has not already been provided to him. Further, consistent with my May 17, 2007, letter, if LivePerson objects to providing any of the information or documentation previously requested by Mr. Freishtat, we ask that you ". . . promptly advise us of LivePerson's rationale for refusing to make the requested information or documentation available so that we can attempt in good faith to resolve any differences we might have in this regard."



**DLA PIPER**

Brian B. Margolis, Esq.
May 25, 2007
Page Two

While we believe that LivePerson is obligated by the terms of the Merger Agreement to send us all Supporting Documentation, we appreciate LivePerson's offer to at least make information and documentation that has not already been provided to us available for inspection at LivePerson's offices in New York. Because, as emphasized in my prior letters, time is of the essence in this matter, we have arranged for our outside consultants to visit LivePerson's offices on Wednesday, May 30, and Thursday, May 31, 2007, to review the additional information and documentation that we have requested. I expect that they will arrive at LivePerson's offices at approximately 10:30 a.m. on the morning of May 30th and assume that they should ask for Mr. Kovach when they get there. If this poses a problem for any reason whatsoever, please let me know immediately.

It is our understanding that the parties are still governed by the Confidentiality Agreement referenced in the Merger Agreement and that it is sufficient to address LivePerson's apparent concern giving rise to a request for an appropriate "Non-Disclosure Agreement." If you disagree, please immediately provide me with a proposed Non-Disclosure Agreement for my review so that we can discuss and finalize the agreement prior to our outside consultants' visit to LivePerson's offices next week.

If you have any questions or would like to discuss this matter further, please let me know. Thank you.

Sincerely,

**DLA Piper US LLP**

Arthur D. Brannan

ADB/jmb

c:      Mr. Michael Kovach
        Jeremy Lechtzin, Esq. (via US Mail only)
        Mr. Gregg Freishtat, Shareholders' Representative
        Joseph G. Silver, Esq.

4338304

# EXHIBIT

# "G"

**DLA PIPER**

DLA Piper US LLP
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309-3450
www.dlapiper.com

Arthur D. Brannan
arthur.brannan@dlapiper.com
T  404.736.7803
F  404.682.7800

May 29, 2007

*VIA ELECTRONIC AND US MAIL*

Brian B. Margolis, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

**Re:    Earn-Out Payment pursuant to the Agreement and Plan of Merger among
LivePerson, Inc., SOHO Acquisition Corp., Proficient Systems, Inc., and Gregg
Freishtat, as Shareholders' Representative, dated as of June 22, 2006 (the "Merger
Agreement")**

Dear Brian:

Pursuant to our telephone discussions last Friday afternoon, following is an initial list of
information and documentation that Mr. Freishtat's outside consultants, David Hoffman and
Chris Grippa of Ernst & Young, would like to review when visiting LivePerson's offices
tomorrow and Thursday.

1.    Chart of accounts for all income statement accounts.

2.    Monthly and quarterly closing packages, including internal financial statements.

3.    General ledger detail for all revenue accounts from July 1, 2006 through April 30, 2007.

4.    Documentation of all revenues that LivePerson believes should be included towards the
      earn-out calculation.

5.    List of all sales by invoice number, with copies of selected supporting invoices, from July
      1, 2006 through April 30, 2007.

6.    Selected customer files. These files may include contracts, POC agreements,
      modifications, work orders, invoices, collections, cancellation notices, notices of non-
      renewal, and other correspondence.

7.    Any available reports evidencing marketing initiatives or practice development spending.

**DLA PIPER**

Brian B. Margolis, Esq.
May 29, 2007
Page Two

8.    Customer master file with all data elements.

9.    Accounts receivable sub ledger by customer.

10.   Accounts receivable aging by customer.

11.   Cash receipts ledger, with invoice numbers that receipts were applied to.

As we discussed, this is only an initial list and Mr. Hoffman and Mr. Grippa no doubt will have follow-up or supplemental requests for additional information and/or documentation once they review the information and documentation listed above. I understand that LivePerson will cooperate with Mr. Hoffman and Mr. Grippa and provide them with the information and documentation requested, provided that such requests are reasonable. If LivePerson would like to discuss or otherwise clarify any of the above-listed requests between now and tomorrow, I suggest that Mr. Kovach call Mr. Hoffman directly at (404) 817-4234.

Finally, because of difficulties arranging their flight schedules, Mr. Hoffman and Mr. Grippa will not arrive at LivePerson's offices until approximately 1:00 p.m. tomorrow. When they arrive, they will ask for Mr. Kovach.

If you have any questions or would like to discuss this matter further, please give either Joseph Silver or me a call. Thank you.

Sincerely,

**DLA Piper US LLP**

Arthur D. Brannan

ADB/jmb

c:    Mr. Tim Bixby
      Mr. Michael Kovach
      Mr. Gregg Freishtat, Shareholders' Representative
      Joseph G. Silver, Esq.

4339215

# EXHIBIT

# "H"

**DLA PIPER**

DLA Piper US LLP
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309-3450
www.dlapiper.com

Arthur D. Brannan
arthur.brannan@dlapiper.com
T  404.736.7803
F  404.682.7800

June 15, 2007

*VIA ELECTRONIC AND US MAIL*

Brian B. Margolis, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

Re:    **Earn-Out Payment pursuant to the Agreement and Plan of Merger among LivePerson, Inc., SOHO Acquisition Corp., Proficient Systems, Inc., and Gregg Freishtat, as Shareholders' Representative, dated as of June 22, 2006 (the "Merger Agreement")**

Dear Brian:

We appreciate your client's willingness to make certain information available to Mr. Freishtat's outside consultants, David Hoffman and Chris Grippa of Ernst & Young, during their visit to LivePerson's offices. However, certain information we have requested on several prior occasions, including the letters dated April 24, 2007, May 17, 2007, May 25, 2007 and May 29, 2007, still has not been made available. The purpose of this letter is to reiterate our prior requests and to further explain our need for the requested information. Capitalized terms not otherwise defined in this letter shall have the meaning ascribed to such terms in the Merger Agreement.

1.    *Documentation Related to Professional Services*

The definition of "Normalized Monthly Revenue" includes professional services fees which are ongoing rather than one-time in nature. We have reason to believe that certain Company Existing Customers, Company Business Development Customers and Company Pipeline Customers paid for professional services that were not one-time in nature and such payments were not used in the preparation of the Earn-Out Notice. In order for us to confirm this belief, we reiterate our request to be provided with all documentation, including, but not limited to, work orders, invoices and proof of concept agreements, related to professional services rendered to Company Existing Customers, Company Business Development Customers and Company Pipeline Customers from the Effective Time through the date hereof. While the key month for the calculations related to the Earn-Out Payment is March 2007, we believe it is necessary to receive professional services related documentation from the Effective Time



Brian B. Margolis, Esq.
June 15, 2007
Page Two

through the date hereof to determine whether professional services were ongoing rather than one-time in nature.

Furthermore, LivePerson's most recent 10-Q filing (which includes March 2007 revenues) refers to increasing professional services fees that are not one-time in nature.[1] Please provide all documentation LivePerson uses to differentiate between professional services that are ongoing rather than one-time in nature and all documentation LivePerson uses to determine whether revenues are recurring.

## 2.    *Documentation Related to Customer Retention*

Section 6.09 of the Merger Agreement requires LivePerson to "use commercially reasonable efforts to maintain and grow the customer base of the Company, consistent with the practices of Parent and the Company prior to the Closing Date, including, without limitation, supporting the efforts to secure the prospective customer set forth on Annex II and Annex III" to the Merger Agreement. Despite several requests, LivePerson has not provided any information that would indicate it complied with this obligation. Indeed, LivePerson received substantial revenues from several large customers of the Company, including CarMax, H&R Block and AllState, following the Effective Time but revenues from such customers was not included in the Earn-Out Payment.

Please provide all documentation that relates to LivePerson's efforts to maintain and grow the customer base of the Company, specifically any efforts related to maintaining LivePerson's relationship with CarMax, H&R Block and AllState. Also, please provide all correspondence between LivePerson and CarMax, H&R Block and AllState related to the cancellation, expiration, termination or non-renewal of such customers' relationship or agreement with LivePerson.

---

[1] Because we provide our application as a service, we follow the provisions of SEC Staff Accounting Bulletin No. 104, "Revenue Recognition" and Emerging Issues Task Force Issue No. 00-21, "Revenue Arrangements with Multiple Deliverables." We charge a monthly fee, which varies by service and client usage. The majority of our larger clients also pay us a professional services fee related to implementation. We may also charge professional service fees related to additional training, business consulting and analysis in support of the LivePerson services. The proportion of our new clients that are large corporations is increasing. These companies typically have more significant implementation requirements and more stringent data security standards. As a result, our professional services revenue has begun to increase. Such clients also have more sophisticated data analysis and performance reporting requirements, and are more likely to engage our professional services organization to provide such analysis and reporting on a recurring basis. As a result, it is likely that a greater proportion of our future revenue will be generated from such ongoing professional services work. LivePerson 10-Q for the period ending March 31, 2007.

**DLA PIPER**

Brian B. Margolis, Esq.
June 15, 2007
Page Three

3.    *Documentation Related to Proof of Concept Agreements*

The definition of "Normalized Monthly Revenue" includes one-half of the monthly recurring revenue which Parent books as revenue in that month, according to GAAP, generated by Company Business Development Customers or Company Pipeline Customers that are on a 90-day paid trial contract. The information provided to date does not specify the start dates or end dates for any paid trial contracts, nor does it specify whether revenues related to trial contracts were related to professional services, software or other services. We have reason to believe that certain Company Business Development Customers and Company Pipeline Customers, including, but not limited to, Mark Travel and Adobe, had paid trial contracts that may have extended longer than 90 days. Please provide all documentation related to the start dates and end dates for all Company Business Development Customers and Company Pipeline Customers that were on paid trial contracts and all documentation related to revenue received therefrom.

4.    *Documentation Related to Geico*

For some reason the Earn-Out Notice excludes certain recurring revenue received from Geico, along with a notation "includes impact of 6 month risk premium." Please explain why certain revenue received from Geico was not included in the Earn-Out Notice.

Because the end of the Review Period specified in the Merger Agreement is quickly approaching, we request that you provide the information referenced above as soon as possible, but no later than June 22, 2007.

We are hopeful that we can resolve any issues related to the Earn-Out Notice without having to resort to the dispute resolution provisions in the Merger Agreement. Accordingly, after you provide the information specified above, we would be happy to schedule a time to meet and discuss our questions and concerns related to the Earn-Out Notice.

**DLA PIPER**

Brian B. Margolis, Esq.
June 15, 2007
Page Four


        If you have any questions or would like to discuss this matter further, please give either
Joseph Silver or me a call.  Thank you.

Sincerely,

**DLA Piper US LLP**

Arthur D. Brannan

ADB/jmb

c:      Mr. Tim Bixby
        Mr. Michael Kovach
        Mr. Gregg Freishtat, Shareholders' Representative
        Joseph G. Silver, Esq.

BALT1\4353830.1

# EXHIBIT

## "I"

**DLA PIPER**

DLA Piper US LLP
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309-3450
www.dlapiper.com

Arthur D. Brannan
arthur.brannan@dlapiper.com
T  404.736.7803
F  404.682.7800

June 28, 2007

*VIA ELECTRONIC AND US MAIL*

Brian B. Margolis, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

Re:    **Earn-Out Payment pursuant to the Agreement and Plan of Merger among
       LivePerson, Inc., SOHO Acquisition Corp., Proficient Systems, Inc., and Gregg
       Freishtat, as Shareholders' Representative, dated as of June 22, 2006 (the "Merger
       Agreement")**

Dear Brian:

I am in receipt of your letter dated June 22, 2007, and respond as follows:

1.    **Documentation Related to Professional Services, etc.**

The E&Y outside consultants, working with Mr. Kovach, determined that LivePerson
recognized "professional services revenue," "one-time revenue," or "agent revenue" in March
2007 for the following entities that was not included in the Earn-Out Notice: (a) National City;
(b) HBOS; (c) MD Nationwide; (d) Mark Travel; (e) Lloyds TSB; and (f) Adobe. So that we can
ascertain whether these revenues constitute "one-time or non-recurring revenues" or
"professional services [that] are ongoing rather than one-time in nature," we again request that
LivePerson immediately provide us with all documentation, including, but not limited to work
orders, invoices and proof of concept agreements related to professional services rendered to
each of these customers from the Effective Time through the date hereof.

Further, we ask that LivePerson address the following specific issues/requests:

(a)    National City: Please provide copies of the Supporting Documentation related to
the $950 in "professional services revenue" received from National City and recognized
as revenue by LivePerson in March 2007.

(b)    HBOS: Please provide copies of the Supporting Documentation related to the
$2,176 in "one-time revenue" received from HBOS and recognized as revenue by
LivePerson in March 2007, as well as a copy of the LivePerson schedule allocating



**DLA PIPER**

Brian B. Margolis, Esq.
June 28, 2007
Page Two

professional services for HBOS.

Also, based on a review of the Supporting Documentation already provided, it appears that Exhibit B2, which is referenced in Addendum #1 to the Services Agreement, has not been provided to us. Accordingly, we ask that you provide us with a copy of Exhibit B2.

Further, as Exhibit B to the Services Agreement and Exhibits B3 and B3.12 to Addenda #2 and #3 involve professional services, and therefore the professional services appear to be "ongoing rather than one-time in nature," please explain LivePerson's rationale for not including this revenue in the Earn-Out Notice.

(c)    MD Nationwide: Based on a review of the Supporting Documentation already provided, it appears that, while Addendum #1 to the "Mater Software Subscription Agreement" was included in the documentation provided, Addendum #1 to the "Services Agreement" was not. Accordingly, please provide us with a copy of Addendum #1 to the "Services Agreement." Also, as we have been unable to marry up the professional services revenue recognized by LivePerson to the documents provided (either those originally produced or those attached to Mr. Kovach's May 25, 2007 letter), please either identify (if already provided) or provide Supporting Documentation related to the "professional services revenue" received from MD Nationwide and recognized as revenue by LivePerson in March 2007.

Also, as the Proficient Subscription Agreement, Addendum #1 to the Master Software Subscription Agreement, and Exhibit B to the Services Agreement each include professional services fees, and therefore the professional services appear to be "ongoing rather than one-time in nature," please explain why LivePerson believes that the MD Nationwide professional services revenue recognized by LivePerson in March 2007 should not be included in the Earn-Out Notice.

2.    **Documentation Related to Customer Retention**

We again request that you provide all documentation relating to LivePerson's relationship with CarMax, H&R Bock and AllState, and any and all correspondence between LivePerson and any of these customers related to the cancellation, expiration, termination or non-renewal of these customers' relationships or agreements with LivePerson. This hopefully will allow us to confirm whether, as your June 22 letter suggests, LivePerson met its obligations pursuant to Section 6.09 of the Merger Agreement and better understand the circumstances surrounding the cancellation, expiration, termination or non-renewal of the agreements at issue.



**DLA PIPER**

Brian B. Margolis, Esq.
June 28, 2007
Page Three

3.    **Documentation Related to Proof of Concept Agreements**

We ask that LivePerson address the following specific issues/requests:

(a)    <u>Mark Travel</u>:  Please explain why only $5,000, as opposed to the $16,000 in Mark Travel revenue recognized by LivePerson in March 2007, was included in the Earn-Out Notice.

(b)    <u>Adobe</u>:  Please provide Supporting Documentation related to the $3,500 in "agent revenue" received from Adobe and recognized as revenue by LivePerson in March 2007. Also, please explain why, given that the Adobe agreement appears to be a 60-Day POC agreement as opposed to a 90-Day POC agreement, LivePerson only included 50% of the $15,000 in recurring revenue recognized by LivePerson in March 2007.

4.    **Documentation Related to Geico**

We have reviewed Geico Addendum #2 (amendment number AD-507-07) and do not understand why LivePerson contends that, "[t]he consideration received from Geico was not included in the Earn-Out Notice as it was contingent and therefore not revenue under GAAP or for purposes of the Earn-Out Payment." Please explain further.  Also, please provide us with a copy of the renewal addendum, if any, between Geico and LivePerson.

Because the end of the Review Period specified in the Merger Agreement is quickly approaching, we request that you provide the information referenced above as soon as possible, but no later than Tuesday, July 3, 2007.

We are hopeful that we can resolve any issues related to the Earn-Out Notice without having to resort to the dispute resolution provisions in the Merger Agreement. Accordingly, after you provide the information specified above, we would be happy to schedule a time either to meet or to confer by telephone and discuss our questions and concerns related to the Earn-Out Notice.



Brian B. Margolis, Esq.
June 28, 2007
Page Four

If you have any questions or would like to discuss this matter further, please give either Joseph Silver or me a call. Thank you.

Sincerely,

**DLA Piper US LLP**

Arthur D. Brannan

ADB/jmb

c:    Mr. Tim Bixby
      Mr. Michael Kovach
      Mr. Gregg Freishtat, Shareholders' Representative
      Joseph G. Silver, Esq.

4339215.2

# EXHIBIT

# "J"

DLA PIPER

One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309-3450
www.dlapiper.com

Arthur D. Brannan
arthur.brannan@dlapiper.com
T  404.736.7803
F  404.682.7800

July 10, 2007

*VIA ELECTRONIC AND US MAIL*

Brian B. Margolis, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

Re:    **Earn-Out Payment pursuant to the Agreement and Plan of Merger among
       LivePerson, Inc., SOHO Acquisition Corp., Proficient Systems, Inc., and Gregg
       Freishtat, as Shareholders' Representative, dated as of June 22, 2006 (the "Merger
       Agreement")**

Dear Brian:

I am in receipt of your letter dated July 6, 2007. While you have provided a few additional documents, your letter either failed to respond, in whole or in part, to various requests for documentation set forth in my letter dated June 28, 2007, or raises additional issues and concerns. In particular, LivePerson has failed to provide the following information or documentation, either in whole or in part:

1.    All documentation, including, but not limited to, work orders, invoices and proof of concept agreements related to "professional services revenues," "one-time revenues," or "agent revenues" booked or recognized by LivePerson from the Effective Time through the date hereof for National City, HBOS, MD Nationwide, Mark Travel, Lloyds TSB and Adobe.

2.    A copy of Addendum #1 to the Services Agreement entered into between LivePerson and MD Nationwide [Note: Addendum #1 to the "Master Software Subscription Agreement ... made and entered into as of 29th March 2006," has an effective date of September 21, 2006. Given that this Addendum #1 specifically references the March 29, 2006, Subscription Agreement and was executed more than two months prior to the "Services Agreement," which has an effective date of December 1, 2006, and given that Addendum #2 specifically references the "Services Agreement ... made and entered into as of 1st December 2006," I suspect that you are mistaken when you state that the two addenda previously provided to us refer to the same agreement and that we are not missing an addendum.

**DLA PIPER**

Brian B. Margolis, Esq.
July 10, 2007
Page Two

3.      Information sufficient to allow us to identify the specific agreement or statement of work related to the professional services revenue received from MD Nationwide and booked or recognized by LivePerson in March 2007. [Note: Alternatively, as previously requested, please simply identify the applicable agreement if it already has been produced.]

4.      Any and all correspondence or documentation of communications between LivePerson and CarMax, H&R Block or AllState related to the cancellation, expiration, termination or non-renewal of these customers' relationships or agreements with LivePerson.

5.      Any and all documentation relating to LivePerson's "use of commercially reasonable efforts to maintain and grow the customer base of the Company consistent with the practices of Parent and the Company prior to the Closing Date," as required by Section 6.09 of the Merger Agreement. This would include, without limitation, electronically stored information contained on LivePerson's "salesforce" system. [Note: Your letter states both that, "generally, all retention efforts were verbal or in person," and "[a]ccordingly, there are no documents related to these retention efforts to provide to you" (emphasis supplied). Because your letter is not entirely clear, I ask that you confirm for us whether or not LivePerson has any documentation related to its "use [of] commercially reasonable efforts to maintain and grow the customer base of the Company consistent with the practices of Parent and the Company prior to the Closing Date;" and, if it does, I ask that LivePerson please provide those documents to us.]

6.      Any and all documentation relating to any foreign currency exchange adjustments (similar to that described for HBOS) booked or recognized by LivePerson for any Company Existing Customers, Company Business Development Customers or Company Pipeline Customers from the Effective Time through the date hereof.

7.      Any and all documentation relating to LivePerson's employment, engagement, use, etc., of contractors, consultants or agents to perform any portion of its scope of work for any Company Existing Customer, Company Business Development Customer or Company Pipeline Customer from the Effective Time through the date hereof.

Further, because your July 6, 2007, letter and attached documentation raises additional issues and concerns relating to Adobe, we request that you furnish us with the following documents:

1.      The Consulting Agreement made and entered into as of August 24, 2006, by and between LivePerson and Adobe Systems, Inc.

2.      Any and all documentation, if any, relating to the non-renewal of the Adobe agreement or

**DLA PIPER**

Brian B. Margolis, Esq.
July 10, 2007
Page Three

relationship.

3.    Any and all documentation relating to 24/7 Customer's agreement(s) or relationship with
LivePerson concerning services or products provided to Adobe.

Also, with respect to Adobe, please explain why only the $3,500 of "[n]et revenue for evaluation
period," as opposed to the $42,000 in "[a]gent fees for 60 day evaluation period," was booked or
recognized as revenue by LivePerson.

With respect to any request for documentation set forth above, if there is no documentation that
is responsive to the particular request, we ask that you please confirm that for us in writing.

LivePerson has repeatedly failed over the course of the past months to provide the Shareholders'
Representative with Supporting Documentation as required by the Merger Agreement. Access to
all Supporting Documentation is critical both to a full and fair resolution of the earn-out and to
the Shareholders' Representative's ability to fulfill his obligations to the Shareholders in this
regard. Because access to the information and documentation is material to resolving various
items included in the Earn-Out Dispute Notice and the fifteen (15) Business Day period within
which the LivePerson and the Shareholders' Representative must endeavor to resolve the dispute
has commenced, time is of the essence now more than ever.

Accordingly, we must insist that LivePerson provide us with the requested information and
documentation by no later than 5:00 pm (Eastern Time) on Friday, July 13, 2007. If LivePerson
fails or refuses to timely comply with this request, the Shareholders' Representative will
commence an action in the appropriate court, seeking declaratory and injunctive relief to enforce
his right pursuant to the Merger Agreement to receive all Supporting Documentation. Further,
should it become necessary for him to resort to legal action to enforce his right to receive the
Supporting Documentation, the Shareholders' Representative also will seek to recover his
attorneys' fees and costs associated with bringing such action.

**DLA PIPER**

Brian B. Margolis, Esq.
July 10, 2007
Page Four

If you have any questions or would like to discuss this matter further, please give either Joseph Silver or me a call. Thank you.

Sincerely,

**DLA Piper US LLP**

*Brannan*

Arthur D. Brannan

ADB/jmb

c:      Mr. Tim Bixby (via e-mail)
        Mr. Michael Kovach (via e-mail)
        Mr. Gregg Freishtat, Shareholders' Representative (via e-mail)
        Joseph G. Silver, Esq. (via e-mail)

# EXHIBIT

# "K"

**DLA PIPER**

**DLA Piper US LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309-3450
www.dlapiper.com

Arthur D. Brannan
arthur.brannan@dlapiper.com
T  404.736.7803
F  404.682.7800

July 9, 2007

*VIA HAND DELIVERY*
*AND ELECTRONIC MAIL*

Mr. Tim Bixby
LivePerson, Inc.
462 Seventh Avenue, 3rd Floor
New York, NY 10018

Brian B. Margolis, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

Re:    **Earn-Out Payment pursuant to the Agreement and Plan of Merger among
LivePerson, Inc., SOHO Acquisition Corp., Proficient Systems, Inc., and Gregg
Freishtat, as Shareholders' Representative, dated as of June 22, 2006 (the "Merger
Agreement")**

Gentlemen:

As you know, our law firm represents Mr. Gregg Freishtat in his capacity as Shareholders'
Representative pursuant to the Merger Agreement. All capitalized terms used in this letter, and
not otherwise defined, shall have the same meaning as those used in the Merger Agreement.

Pursuant to Section 2.04(b)(v) of the Merger Agreement, Mr. Freishtat, as Shareholders'
Representative, hereby provides this Earn-Out Dispute Notice to LivePerson and objects to the
following items (or calculations thereof) related to the Earn-Out Notice:

**DLA PIPER**

Mr. Tim Bixby
Brian B. Margolis, Esq.
July 9, 2007
Page Two

| | CUSTOMER | MARCH 2007 REVENUE[1] | AMOUNT INCLUDED IN EARN-OUT NOTICE | DIFFERENCE |
|---|---|---|---|---|
| 1. | Adobe | $18,500 | $7,500 | $11,000 |
| 2. | Allstate | 10,500 | 0 | 10,500 |
| 3. | CarMax | 22,000 | 0 | 22,000 |
| 4. | Geico | 62,500 | 56,250 | 6,250 |
| 5. | HBOS | 13,666 | 11,490 | 2,176 |
| 6. | H&R Block | 6,950 | 0 | 6,950 |
| 7. | Mark Travel | 16,000 | 5,000 | 11,000 |
| 8. | MD Nationwide | 10,725 | 5,850 | 4,875 |
| 9. | National City | 2,950 | 2,000 | 950 |

10. All Company Existing Customers, Company Business Development Customers and Company Pipeline Customers, including those customers listed above, for which revenues (or additional revenues) would have been included in the calculation of Net Annualized Revenue and the amount of the Earn-Out Payment due to Shareholders in the event LivePerson had fulfilled its obligation pursuant to Section 6.09 of the Merger Agreement to "use commercially reasonable efforts to maintain and grow the customer base of the Company consistent with the practices of Parent and the Company prior to the Closing Date, including, without limitation, supporting the efforts to secure the prospective customers set forth on Annex II and Annex III hereto … ."

---

[1] The March 2007 Revenues listed here are based on information provided by LivePerson and may not be accurate. Therefore, Mr. Freishtat reserves the right to seek further adjustments to the Earn-Out Payment in the event that LivePerson either booked or recognized or should have booked or recognized revenues for March 2007 that are greater than those indicated here.



Mr. Tim Bixby
Brian B. Margolis, Esq.
July 9, 2007
Page Three


The difference between the revenue that was booked or recognized (or should have been booked or recognized) by LivePerson in March 2007 and the amount included in the Earn-Out Notice exceeds $75,701. Pursuant to the terms of the Merger Agreement, this correlates to an underpayment of at least 844,823 shares of Parent Common Stock.

As noted in prior correspondence, LivePerson repeatedly has failed to provide Mr. Freishtat with complete Supporting Documentation as required by Section 2.04(b)(iv) of the Merger Agreement. As a result, Mr. Freishtat's efforts to fully ascertain the extent and nature of further deficiencies in the Earn-Out Notice, if any, have been materially compromised. Accordingly, Mr. Freishtat hereby expressly reserves the right to amend this Earn-Out Dispute Notice once he has received and had a reasonable opportunity to review all Supporting Documentation previously requested.

As contemplated by Section 2.04(b)(v) of the Merger Agreement, and consistent with our prior invitations, Mr. Freishtat is prepared to try and resolve this dispute within the next fifteen (15) Business Days. Please let us know whether LivePerson is prepared to do the same.

Finally, in the event that the dispute, or any portion of it, is submitted to an Accounting Referee, and to the extent that any of the items set forth in this Earn-Out Dispute Notice involve issues outside the scope of the Accounting Referee's expertise or Mr. Freishtat disagrees, either in whole or in part, with the Accounting Referee's determination, Mr. Freishtat hereby expressly reserves the right to seek appropriate relief from the courts as contemplated by the Merger Agreement.

If you have any questions, or would like to discuss this matter further, please give either Mr. Freishtat, Joseph Silver or me a call. Thank you.

Sincerely,

**DLA Piper US LLP**

Arthur D. Brannan

ADB/jmb

**DLA PIPER**

Mr. Tim Bixby
Brian B. Margolis, Esq.
July 9, 2007
Page Four


c:      Mr. Michael Kovach (via e-mail)
        Mr. Gregg Freishtat, Shareholders' Representative (via e-mail)
        Joseph G. Silver, Esq. (via e-mail)