**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| GREGG FREISHTAT, as<br>Shareholders' Representative, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 1:07-CV-6838-JGK |
| v. | : | |
| | : | |
| LIVEPERSON, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LIVEPERSON, INC.'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS AND IN OPPOSITION TO**
**PLAINTIFF'S PETITION FOR APPOINTMENT OF ACCOUNTING REFEREE**

I.      **Introduction**

An "earn-out" is a common feature in corporate transactions. Typically, an earn-out

provision is designed to create an incentive for those selling a company to support and cooperate

with ongoing sales and transition efforts following the close of the sale, by creating the

possibility of an additional payment at some point in the future if certain metrics or objectives

are met. Because of the very nature of earn-out payments – they frequently entail potentially

large sums, but the sums are not fixed until after the closing, and when they are determined, they

are often calculated by one party based upon figures and accounting principles that may be less

than transparent to the other party – it is also common for questions or disputes to arise with

respect to these payments. Since such disputes can be so readily anticipated, it is logical and

important for transactional agreements to include detailed and timely procedures that must be followed should a dispute arise with respect to an earn-out payment.

Indeed, the Agreement and Plan of Merger among LivePerson, Inc., Soho Acquisition Corp., Proficient Systems, Inc., and Gregg Freishtat, as Shareholders' Representative, dated as of June 22, 2006 ("Merger Agreement"), attached as Exhibit A to the Complaint, put in place an unambiguous procedure for dispute resolution. Pursuant to that provision,[1] and in a clear effort to ensure that any disagreements over the Earn-Out Payment would be resolved promptly and without needless cost, all disputes were to be submitted within a 15-day window to a reputable accounting referee who was to resolve it within a month. Under the Agreement, although this remedy results in a determination that is ultimately not binding, it was nevertheless mandatory that it be pursued *before* resorting to litigation. Plaintiff Gregg Freishtat ("Plaintiff") does not contest the unambiguousness of this clause – he simply ignored it, choosing instead to wield the club of a federal lawsuit, presumably as an intimidation tactic, thereby thrusting the parties into needless and costly litigation. Ironically, Plaintiff accuses LivePerson of breach of the Merger Agreement, when Plaintiff's very act of bringing this lawsuit flies in the face of the explicit, mandatory terms of the agreement.

More than six months have now passed since the Earn-Out Payment was made, and over four months since this dispute, if it was genuine, was to have been submitted to an accounting referee. The time for the accounting referee process has come and gone, and with it the ability to reap the benefits of that dispute resolution mechanism. LivePerson has been forced to expend significant amounts of both time and money defending itself in this matter because Plaintiff chose to escalate to litigation. If Plaintiff believed that this matter could have been resolved via

---

[1] Section 2.04(b)(v) of the Merger Agreement, quoted *infra*.

the accounting referee process, then bringing suit prior to that process makes no logical sense. Furthermore, Plaintiff's tardy request for appointment of an accounting referee – filed just two days ago – at this late stage is too little, too late.[2] Plaintiff cannot be permitted to breach a material term of the agreement and bring suit under that very same agreement.

## II.    Brief Statement of Facts

On May 10, 2007, LivePerson furnished Mr. Freishtat, as Shareholders' Representative, with an Earn-Out Notice, attached as Exhibit B to the Complaint, prepared pursuant to Section 2.04(b)(iii) of the Merger Agreement,[3] and simultaneously delivered the number of shares of Parent Common Stock reflected in said Earn-Out Notice to Mr. Freishtat. Although the Earn-Out Payment calculation could have been anywhere between 0 and 2.05 million shares, the actual calculation yielded a payment of 1,132,341 shares. On July 9, 2007, during the relevant review period, Mr. Freishtat, by and through his counsel, furnished LivePerson with an Earn-Out Dispute Notice, attached as Exhibit K to the Complaint, pursuant to Section 2.04(b)(v) of the Merger Agreement,[4] objecting to various items or calculations thereof related to the Earn-Out Notice, and alleging an underpayment of at least 844,823 shares of Parent Common Stock.

---

[2] Only after Plaintiff was made aware of Defendant's intent to file the present motion did Plaintiff petition the Court for appointment of an Accounting Referee. The time to do so has long since passed, and Plaintiff's failure to act on this within the relevant time frame explicitly provided in the Merger Agreement precludes him from doing so now. As further evidence of the disingenuous nature of Plaintiff's petition, the Court need look no further than the Complaint, which seeks, *inter alia*, an injunction preventing LivePerson from submitting any accounting issues in dispute to an accounting referee. *See* Complaint ¶ 52(b), described *infra*.

[3] This section provides: "On or before the Earn-Out Payment Date, Parent [LivePerson] shall deliver to the Shareholders' Representative a memorandum (the "***Earn-Out Notice***") … specifying in reasonable detail (i) the calculation of Net Annualized Revenue, and (ii) the amount of the Earn-Out Payment, if any, due to the Shareholders." Merger Agreement § 2.04(b)(iii) (emphasis in original).

[4] This section provides, in part: "At any time during the Review Period, the Shareholders' Representative shall have the right to object in writing to any item (or any calculation thereof) on the Earn-Out Notice (an "***Earn-Out Dispute Notice***")." Merger Agreement § 2.04(b)(v) (emphasis in original).

In a good faith effort to resolve the dispute, as contemplated by Section 2.04(b)(v) of the Merger Agreement,[5] LivePerson provided to Plaintiff voluminous documentation and information related to the preparation of the Earn-Out Notice.  In fact, the material provided went well beyond the scope of the documentation and information that LivePerson was required to supply or to which Plaintiff was entitled, pursuant to Section 2.04(b)(iv).[6]  Not only did LivePerson furnish a four-inch binder of supporting documentation with its Earn-Out Notice, but it subsequently allowed two representatives from Ernst & Young, working on Mr. Freishtat's behalf, to come on-site at LivePerson's offices and review any and all documentation they requested.  LivePerson also responded to numerous letters and questions from Mr. Freishtat.  At no time during the entire month did Mr. Freishtat or his counsel take any steps to follow the mandatory accounting referee procedure.  Rather, on July 30, 2007, Mr. Freishtat filed this action, seeking (1) a declaratory judgment that LivePerson is obligated to produce or make available certain documents requested by Mr. Frieshtat; (2) an injunction, preventing LivePerson from submitting any accounting issues in dispute to an Accounting Referee until 15 business days following the delivery of unspecified additional information and documentation; and (3) judgment against LivePerson for damages stemming from an alleged breach of the merger agreement.

---

[5]  This section provides, in relevant part: "If the Shareholders' Representative delivers an Earn-Out Dispute Notice to Parent, the Shareholders' Representative and Parent shall first endeavor to resolve the dispute between themselves."  Merger Agreement § 2.04(b)(v).

[6]  This section provides: "During the period beginning on the Earn-Out Payment Date and ending two months thereafter (the "*Review Period*"), the Shareholders' Representative shall have the right to request and promptly receive all documentation and records used in, or that reasonably should have been considered for use in, the preparation of any Earn-Out Notice, including, but not limited to, copies of all contracts with Company Existing Customers, Company Business Development Customers and Company Pipeline Customers and related agreements, documentation and payments to Parent Company or any of their respective Affiliates ("*Supporting Documentation*")."  Merger Agreement § 2.04(b)(iv).

In doing so, however, Plaintiff failed to take heed that the Merger Agreement

contemplates an explicit, mandatory method for resolution of such disputes *before* they can be

brought before the court as a state or federal action.[7]  Section 2.04(b)(v) provides as follows:

> If the Shareholders' Representative and Parent are unable to
> resolve the dispute within fifteen (15) Business Days of delivery of
> the Earn-Out Dispute Notice to Parent, the dispute shall be
> submitted to a firm of regionally or nationally recognized certified
> public accountants, or other party acceptable to both parties (an
> "*Accounting Referee*").  If the parties cannot agree upon the
> Accounting Referee within ten (10) calendar days of the
> conclusion of the foregoing 15 Business Day period, each party
> shall have the right to petition the courts within the State of New
> York, County of New York or the United States District Court for
> the Southern District of New York to so appoint an Accounting
> Referee ... [which] shall use its best efforts to resolve the dispute
> within thirty (30) calendar days of the date such matter was
> submitted to it.

Plaintiff might have sought relief at the time he filed his lawsuit from this requirement, in order

to keep his claims viable, but he did not do so.

Hence, pursuant to the unambiguous agreement of the parties, on or before July 27, 2007

(*i.e.*, within fifteen business days of Freishtat's July 9, 2007 Earn-Out Dispute Notice), since the

parties could not come to an agreement, the dispute was ripe for submission to an accounting

referee.  At the very least, had Plaintiff even attempted to comply with the terms of the Merger

Agreement, the parties could have begun discussing potential accounting referees, and if none

could be agreed upon, only then could have – and should have – petitioned the court to appoint

an accounting referee.  By the end of August, the dispute should have been considered and

---

[7]  A later section of the agreement provides: "This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York other than conflict of laws principles thereof directing the application of any law other than that of New York.  Courts within the State of New York, County of New York or the United States District Court for the Southern District of New York will have jurisdiction over all disputes between the parties hereto arising out of or relating to this agreement and the agreements, instruments and documents contemplated hereby.  The parties hereby consent to and agree to submit to the jurisdiction of such courts." Merger Agreement § 11.05.

decided. Instead, Plaintiff thrust the parties into a frivolous, costly and time-consuming federal

litigation, resulting in an as-yet-unresolved dispute many months later.

## III.    Argument

### A.    Standard for Judgment on the Pleadings Weighs Heavily in Favor of Granting Defendant LivePerson's Motion

On a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), the moving

party will prevail if it is entitled to judgment as a matter of law. *See Rolon v. Henneman*, 389 F.

Supp. 2d 517, 518 (S.D.N.Y. 2005) (citing *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United*

*Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir. 1994)). The standard for deciding such a

motion mirrors that which is applied to Rule 12(b)(6) motions to dismiss for failure to state a

claim upon which relief may be granted. *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co.*

*Americas*, No. 04 CIV 10014 (PKL), 2005 WL 1950116, at *3 (S.D.N.Y. Aug. 12, 2005) (citing

*Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)). Accordingly, judgment on the

pleadings is appropriate if, drawing all reasonable inferences in favor of the non-moving party, it

is apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to

relief. *See id.*. When deciding a Rule 12(c) motion, the court shall consider "the pleadings and

exhibits attached thereto, statements or documents incorporated by reference in the pleadings,

matters subject to judicial notice, and documents submitted by the moving party, so long as such

documents either are in the possession of the party opposing the motion or were relied upon by

that party in its pleadings." *Aristocrat Leisure*, 2005 WL 1950116, at *3 (quoting *Prentice v.*

*Apfel*, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citing *Brass v. American Film Techs., Inc.*, 987

F.2d 142, 150 (2d Cir.1993)).

Though the well-pleaded factual allegations of the complaint are assumed to be true, where a plaintiff's conclusory allegations are clearly contradicted by documentary evidence incorporated into the pleadings by reference, however, the court is not required to accept them. *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (3d ed. 2004).

### B.    Plaintiff's Claims Fail Because He Does Not and Cannot Plead His Own Adequate Performance Under the Merger Agreement

To pursue a valid claim for breach of contract under New York law, Plaintiff must be able to demonstrate: (1) the existence of a valid, enforceable agreement; (2) performance of the agreement by Plaintiff; (3) breach of the agreement by Defendant; and (4) damages attributable to the breach. *See Bridgeport Music, Inc. v. Universal Music Group, Inc.*, 440 F. Supp. 2d 342, 344-45 (S.D.N.Y. 2006); *Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001).

Both parties understand, and do not contest, that the Merger Agreement, as a covenant among sophisticated entities, governs this dispute. Plaintiff has never indicated that the conditions precedent of Section 2.04(b)(v) were in any way ambiguous.[8] Yet, he filed this action with complete disregard for them – and without any effort to be relieved of the important requirements of that section. Moreover, he seeks to avoid these mandatory provisions of the Merger Agreement, while hypocritically alleging that LivePerson breached that very agreement. However, this allegation is not only baseless, it also fails to excuse Plaintiff's own breach of the

---

[8] Nor can he. "No ambiguity exists when contract language has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion.'" *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (quoting *Breed v. Insurance Co. of N. Am.*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355 (1978)). "Parties to a contract may not create an ambiguity merely by urging conflicting interpretations of their agreement." *Sayers*, 7 F.3d at 1095 (citations omitted).

contract. *See, e.g., Chleck v. General Elec. Co.*, 287 F. Supp. 2d 457, 460 (S.D.N.Y. 2003)

("[u]nder the Agreement, the parties expressly agreed to submit all disputes over post-closing

accounting to the Accounting Referee, and plaintiffs cannot escape this term of the Agreement

simply by alleging that defendant breached the contract in bad faith.").

Plaintiff therefore does not, and cannot, allege that he himself adequately performed

under the Merger Agreement. *See* Complaint; *see also Eternity Global Master Fund Ltd. v.*

*Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (under New York law, a fundamental

requirement "[t]o make out a viable claim for breach of contract" is to allege "adequate

performance of the contract" by the Plaintiff). Indeed, his simple act of prematurely filing this

lawsuit constituted a material breach[9] of Section 2.04(b)(v), and it is this very act which also

precludes him from seeking relief from this Court. *See* Glen Banks, *New York Contract Law* §

17.12 at 636 (West N.Y. Practice Series 2006) (a party that first materially breaches a contract

"cannot establish a claim against the other party for breach of th[at] contract."); *see also K.M.L.*

*Labs. Ltd. v. Hopper*, 830 F. Supp. 159, 166 n.5 (E.D.N.Y. 1993) (applying New York law) ("a

party must perform his or her obligations under a contract before he or she may recover on a

breach of contract claim.").

The time has long since passed to remedy Plaintiff's breach by submitting this dispute to

an accounting referee. Plaintiff's failure to do so at the appropriate time has resulted in needless

---

[9] In determining whether a breach is material, the Court is mindful of the special purpose of the contract, and considers the following circumstances: "the extent to which the injured party will be deprived of the benefit which [it] reasonably expected"; "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived"; "the extent to which the party failing to perform or offer to perform will suffer forfeiture"; "the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances"; and "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." Restatement (Second) of Contracts § 241(a) (1981); *see also Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997).

expense and prejudice to LivePerson. His attempt to do so now by petitioning the Court for appointment of an accounting referee, *see* Pl. Pet. for Appointment of Accounting Referee (filed Dec. 3, 2007) – a complete back-tracking from the demands of his Complaint, *see* Complaint ¶ 52(b) (seeking an order enjoining LivePerson from submitting any accounting issues in dispute to an accounting referee) (filed July 30, 2007) – is, if not utterly disingenuous, nevertheless simply too little too late. His continued resistance to LivePerson's overtures to revisit the requested information and documentation provided to E&Y related to the preparation of the Earn-Out Notice and to address these issues without embroiling the parties in lengthy discovery now borders on harassment. Moreover, by thrusting the parties into a federal litigation, in direct contravention of the explicit, mandatory prerequisites of the Merger Agreement, Plaintiff is barred from seeking relief from this Court under that very same agreement.

### C.   The Court Should Stay Discovery Until the Present Motion has Been Fully Briefed, Heard, and Decided

The Court, during the consideration of this motion, "may stay this litigation pursuant to its inherent authority to effectively manage its docket." *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 269 F. Supp. 2d 356, 364 (S.D.N.Y. 2003) (citing cases). Such a stay is appropriate where, as here, the matter was improperly brought and is subject to dismissal.

## IV.   Conclusion

For the foregoing reasons, Defendant LivePerson's Motion for Judgment on the Pleadings should be granted, and Plaintiff's Petition for Appointment of Accounting Referee should be denied.

Respectfully submitted,

Dated:  December 5, 2007
        New York, New York          By:  /s/  Douglas F. Curtis
                                                Douglas F. Curtis  (DC 2076)
                                                Brian B. Margolis
                                                  Justina L. Geraci  (JG 0007)
                                                WILMER CUTLER PICKERING
                                                HALE AND DORR LLP
                                                399 Park Avenue
                                                New York, NY 10022
                                                Tel: 212-230-8800
                                                Fax: 212-230-8888
                                                douglas.curtis@wilmerhale.com

                                                *Attorneys for Defendant LivePerson, Inc.*