UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| GREGG FREISHTAT, as Shareholders' Representative, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 1:07-CV-6838-JGK |
| v. | : | |
| | : | |
| LIVEPERSON, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT LIVEPERSON, INC.'S MOTION FOR JUDGMENT ON THE
PLEADINGS AND IN OPPOSITION TO PLAINTIFF'S PETITION FOR
APPOINTMENT OF ACCOUNTING REFEREE

I.    Introduction

Plaintiff Freishtat nowhere denies that the accounting referee procedure is a required step to which the parties agreed in their Merger Agreement. Nor does he deny that the inclusion of such a requirement in the Merger Agreement was a key element of the earn-out provision, because questions and disagreements relating to the calculation of an earn-out payment are to be expected, and it is important to have a dispute resolution mechanism in place to deal with them. But Plaintiff would rewrite the Merger Agreement to excuse himself from his clear failure to honor the mandatory and expedited mechanism he agreed to. He raises numerous arguments to justify his decision to bypass that procedure and use federal litigation as a first step, rather than as a last resort. But in the end, he has ignored the requirements of the contract, and he has done

so without seeking either the consent of LivePerson, or the intervention of this Court to protect him from the consequences of his decision. He has made a tactical choice that has imposed cost and burden on LivePerson, and deprived LivePerson of the benefit of a timely and efficient mechanism for reaching a resolution of whatever genuine disputes may exist between the parties. Just as this Court would hold Plaintiff accountable for failure to meet a filing deadline, the Court can and should find that Plaintiff has waived his right to pursue further relief in this action.

## II.    Argument

On a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), though the well-pleaded factual allegations of the complaint are assumed to be true, that does not mean that all of a plaintiff's conclusory assertions must be accepted. Where a plaintiff's legal conclusions are clearly contradicted by the facts that are alleged in the complaint, or the facts that are manifest from the documents incorporated into the pleadings by reference, the court is not required to accept the plaintiff's conclusions. *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (3d ed. 2004).

Thus, although Plaintiff argues that he has "sufficiently pleaded that all conditions precedent have been performed or have occurred or, in the alternative, that such performance has been excused," Pl. Mem. at 8, the facts that are set forth in his Complaint contradict that assertion.[1] The oft-quoted language of Section 2.04(b)(v) of the Merger Agreement lays out in unambiguous terms the mandatory (albeit non-binding) dispute resolution method for issues

---

[1] In defending the sufficiency of his pleadings on this point, while arguing that "any such requirement," such as the submission of the dispute to an Accounting Referee, fails to "rise to the level of a condition precedent," Plaintiff adds a footnoted allegation that LivePerson's denial of the occurrence of all conditions precedent was not "made specifically and with particularity." Pl. Mem. at 13-14. LivePerson respectfully directs the Court to Defendant's Answer at ¶37, Third Affirmative Defense, and Request for Relief, where LivePerson specifically identifies the conditions that have been unfulfilled, thus putting this very failure by Plaintiff into issue.

relating to the Earn-Out *before* any other action is taken – namely, the accounting referee process.[2] Should their endeavors to resolve the dispute between themselves fail, the issue *must* be submitted to an accounting referee:

> If the Shareholders' Representative and Parent are unable to resolve the dispute within fifteen (15) Business Days of delivery of the Earn-Out Dispute Notice to Parent, the dispute shall be submitted to a firm of regionally or nationally recognized certified public accountants, or other party acceptable to both parties (an *"Accounting Referee"*).

This section also contemplates a specific, firm and swift schedule according to which this entire Accounting Referee process is to be commenced and completed, immediately following the fifteen business days given to the parties to work through the issues between themselves:

> If the parties cannot agree upon the Accounting Referee within ten (10) calendar days of the conclusion of the foregoing 15 Business Day period, each party shall have the right to petition the courts within the State of New York, County of New York or the United States District Court for the Southern District of New York to so appoint an Accounting Referee … [which] shall use its best efforts to resolve the dispute within thirty (30) calendar days of the date such matter was submitted to it.

The mandatory dictates of this section of the Merger Agreement are express and unambiguous, yet Plaintiff filed the present action with utter disregard for them. Plaintiff did not discuss the accounting referee process during or after the expiration of the 15-business-day period established by the Merger Agreement for the parties to attempt to resolve any issues. Moreover, the Plaintiff never made any effort to seek agreement for the selection of an accounting referee, or propose potential referees, or solicit suggested referees from LivePerson. Nor did he seek consent to postpone the accounting referee process. Rather, he ignored the procedure altogether.

---

[2] Section 2.04(b) of the Merger Agreement, beginning with the calculation of the Earn-Out Payment, is, in its entirety, mandatory, highly circumscribed, and precise, which renders uniquely peculiar Plaintiff's argument that this one element – the Accounting Referee process of subsection (v) – is immaterial and non-mandatory.

And when he commenced this litigation, he did not request any interim relief from this Court to excuse his non-adherence to the terms of the Merger Agreement.

In defense, Plaintiff argues, unpersuasively, that the accounting referee requirement is ultimately hortatory, rather than mandatory, because he was entitled to make a prior determination whether he had enough information to pursue that course. *But see, e.g., Chleck v. General Elec. Co.*, 287 F. Supp. 2d 457, 460 (S.D.N.Y. 2003) ("Under the Agreement, the parties expressly agreed to submit all disputes over post-closing accounting to the Accounting Referee, and plaintiffs cannot escape this term of the Agreement simply by alleging that defendant breached the contract in bad faith."). Indeed, he now argues that he "has *always* intended to submit any earn-out dispute to an Accounting Referee," but that he wanted more documentation before doing so. Pl. Mem. at 9 (emphasis added). But in making this argument, Plaintiff is attempting to insert a non-existent passage into this section of the contract, by essentially suggesting that there is some prerequisite to commencement of the Accounting Referee process – namely, the discovery process of a federal lawsuit.[3] But the requirement to pursue the accounting referee process, as outlined in Section 2.04(b)(v), does not give the Plaintiff an opportunity to determine – in his own discretion – that he would like additional information to see whether he has a basis to submit issues to the accounting referee. Such an

---

[3] Plaintiff alleges that the Merger Agreement "contemplates that all Supporting Documentation would be provided to the Shareholders' Representative *before* the earn-out dispute is submitted to an Accounting Referee and both LivePerson and the Shareholders' Representative reasonably should have expected that this is what would occur." Pl. Mem. at 12 (emphasis in original). This assertion is flawed on many levels. First and foremost, it has been LivePerson's position from the start that it has already provided Plaintiff with information and documentation well beyond that which would be considered "Supporting Documentation" under the Merger Agreement. Second, there is no support whatsoever in the contract for Plaintiff's assertion that the provision of Supporting Documentation that Plaintiff deems adequate is a mandatory prerequisite to the commencement of the Accounting Referee process. In fact, the broad language of Section 2.04(b)(v) posits the Accounting Referee process as *the* dispute resolution mechanism in the first instance for any and all disputes that arise (and which cannot be resolved) in the context of the Earn-Out notice – which would logically *include* the alleged insufficiency of the documents and information provided to the Shareholders' Representative. Plaintiff could have submitted that issue to an Accounting Referee in a timely manner, under the express terms of the agreement – *that* is what the parties reasonably expected to occur.

interpretation of this section would eviscerate the provision. *See generally Scholastic, Inc. v. Harris*, 259 F.3d 73, 83 (2d Cir. 2001) (contracts should be construed in light of "the entire integrated agreement to safeguard against adopting an interpretation that would render any individual provision superfluous") (internal quotation omitted); *Corhill Corp. v. S.D. Plants, Inc.*, 9 N.Y.2d 595, 599, 176 N.E.2d 37, 38, 217 N.Y.S.2d 1, 3 (N.Y. 1961).

Alternatively, Plaintiff argues that the agreement itself does not in fact "require[] that the Shareholders' Representative submit the earn-out dispute to an Accounting Referee before pursuing litigation." Pl. Mem. at 9. The logic of this argument, however, would require the Court to conclude that the Merger Agreement should be construed to permit the parties to pursue the mandatory accounting referee procedure before, during, or after litigation – an interpretation that is in all practical respects absurd. There is no reason the parties would include a mandatory alternative dispute resolution mechanism, but leave it to one or the other of them to decide to pursue it only after a dispute has been finally adjudicated in the courts.

In the course of arguing that he was not required to pursue the accounting referee process on the prompt timetable that is set forth in the Merger Agreement, Plaintiff makes additional, peculiar assertions about the nature and substance of this lawsuit. In particular, although Plaintiff's Complaint squarely includes a count – namely, Count III – for "Breach of Merger Agreement" and damages resulting therefrom,[4] he now suggests that the only reason he filed

---

[4] Specifically, Plaintiff alleges in his Count III that LivePerson "breach[ed] ... its obligation ... to use commercially reasonable efforts to maintain and grow the customer base of Proficient" (Compl. ¶56), and "breached its obligation to properly account for Net Annualized Revenue" under the Merger Agreement (Compl. ¶58), and seeks money damages for the "underpayment of shares" pursuant to the Earn-Out provision (Compl. ¶62).

these claims was because "he was *required* to do so." Pl. Mem. at 5 (emphasis added).[5] Indeed, he now argues that all he has really sought in this litigation is to obtain additional documentation, "so that he could 'fulfill his obligation to properly, fully and fairly represent the interests of the Shareholders in connection with the possible submission of disputes concerning accounting issues to an Accounting Referee.'" *Id.* at 14. This is a curious proposition – suggesting either (i) that Mr. Freishtat was without a factual basis to dispute the Earn-Out payment, and was thus without a basis to allege the breaches set forth in his Complaint (as to which he has attached very specific damages calculations, Pl. Mem. at 4 (claiming that the Earn-Out Payment "was at least 844,823 shares of LivePerson common stock less than it should have been")), or (ii) that in fact the voluminous documentation he has received from LivePerson has given him an adequate factual basis to contest the Earn-Out calculation, in which case his contention that he somehow lacks sufficient information to make such an assessment is, perhaps, exaggerated.

The time has long since passed for Plaintiff to attempt to remedy his breach by submitting this dispute to an accounting referee, regardless of whether or not he always intended to do so – which he now argues. Plaintiff's failure to do so at the appropriate time has resulted in needless expense and prejudice to LivePerson, and his attempt to petition the Court now for appointment of an accounting referee at this precise stage is disingenuous. By thrusting the parties into a federal litigation, in direct contravention of the explicit, mandatory prerequisites of

---

[5] For this proposition, Plaintiff relies on the inapposite case of *Giannone v. York Tape & Label, Inc.*, No. 06-6575(JFB), 2007 WL 1521500 (E.D.N.Y. May 23, 2007). There, Plaintiff commenced an action against his former employer, seeking a declaration of his rights under a restrictive covenant not to compete and an order permanently enjoining defendant from enforcing the restrictive employment covenants against him, but not seeking damages resulting therefrom. The Court granted summary judgment on plaintiff's complaint, declaring the restrictive covenant void for lack of consideration and enjoining the enforcement of the restrictive covenant. A year later, plaintiff commenced another action against defendant, seeking damages for its commission of a commercial tort in enforcing the restrictive covenant that had been declared void. Though the Court explores the application of the declaratory judgment exception, nowhere in this opinion does it state that Plaintiff is required, under New York law, to bring a claim for damages stemming from allegations of a contractual breach for which he has no current good faith factual basis.

the Merger Agreement, Plaintiff is barred from seeking relief from this Court under that very same agreement.

## III.    Conclusion

The accounting referee process established in the Merger Agreement was not a mere formality that may be brushed aside without consequence. It was a detailed, important, substantive protection that was negotiated and agreed by the parties, requiring them at an early stage to bring a neutral expert in to frame, address and – it could be hoped – resolve any issues that arose in connection with the earn-out payment. By ignoring this provision, Plaintiff has prejudiced LivePerson substantially. This lawsuit was brought improperly, without adherence to the Plaintiff's contractual obligations, and it should not be sanctioned.

For these additional foregoing reasons, Defendant LivePerson's Motion for Judgment on the Pleadings should be granted, and Plaintiff's Petition for Appointment of Accounting Referee should be denied.[6]

Respectfully submitted,

Dated:  December 21, 2007
        New York, New York

By:    /s/  Douglas F. Curtis
       Douglas F. Curtis  (DC 2076)
       Brian B. Margolis
       Justina L. Geraci  (JG 0007)
       WILMER CUTLER PICKERING
       HALE AND DORR LLP
       399 Park Avenue
       New York, NY 10022

---

[6] LivePerson reserves its right to pursue its requested stay of discovery should the Court take this matter under advisement following the January 18, 2007 hearing.

Tel: 212-230-8800
Fax: 212-230-8888
douglas.curtis@wilmerhale.com

*Attorneys for Defendant LivePerson, Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| GREGG FREISHTAT, as<br>Shareholders' Representative, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 1:07-CV-6838-JGK |
| v. | : | |
| | : | |
| LIVEPERSON, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Defendant LivePerson, Inc.'s Reply Memorandum in Support of its Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Petition for Appointment of Accounting Referee, was served upon the following counsel of record on December 21, 2007, electronically and via hand delivery:

Christopher G. Campbell
Arthur D. Brannan
Anthony D. Lehman
DLA PIPER US LLP
One Atlantic Center
1201 West Peachtree Street
Suite 2800
Atlanta, Georgia 30309-3450
christopher.campbell@dlapiper.com
arthur.brannan@dlapiper.com
anthony.lehman@dlapiper.com

/s/  Justina L. Geraci

Justina L. Geraci